Mr. Chief Justice Shahket
delivered the opinion of the court.
There is but one question in this case which presents itself for consideration, and that is, do the facts create-a resulting trust in favor of Jackson the complainant, in the land in question? By the attitude in which the case is presented, we are relieved from deciding a question which has frequently arisen in similar cases, and which has been a question much discussed. I mean the admissibility of ¡parol testimony to establish the trust. The answer admits in substance the only material allegation in the bill, and in itself states the contract in such a shape as to obviate in a great measure, if not entirely, the necessity of any proof. The contract as it appears from the bill and answer, was in substance as follows, to wit; In 1832 complainant purchased of defend *359 ant two eighths of land, adjoining to which there was a vacant eighth, on which part of the improvements of the plantation had been made. That the vacant piece of land was afterwards entered by James Phillips. That Phillips subsequently agreed with complainant to sell him this piece of land for the price which he had paid, and as it was important to complainant that he should get it, the defendant at two different times urgéd him to complete the arrangement with Phillips, and when they last spoke of it the complainant informed the defendant, that he could not get it without paying to Phillips the entrance money, which he was then unable to do, and proposed to borrow the amount from defendant; which he refused to loan, but offered to become the purchaser of the .land himself by paying Phillips the money with an understanding, that if complainant would refund to him the amount advanced to Phillips out of his crop of cotton of that year, (1832,) together with the value of the improvements which respondent had made on the land, that he would then transfer the land to complainant. The complainant agreed to the proposition, and bound himself to send his cotton to Yicksbm’g subject to the order of respondent, which the answer alleges he failed to do, but admits a subsequent tender of the money. The money was paid to Phillips by respondent, and the security for title made to him at the time and in presence of Jackson. Jackson, it seems, was in possession of the land in dispute, and as it appears by the answer, was entitled to a preemption right under the laws of the United States; and it is stated in'the answer, that respondent was induced to urge Jackson [o complete his arrangement with Phillips before his preemption right expired, that he, respondent, might be compensated for his "expenditures on the land.
In addition to these facts disclosed by the parties, the testimony is calculated to strengthen the equity of the claim. Phillips states, that he entered the land, and was afterwards informed, that part of complainant’s improvement was on the land; that in consequence of these improvements he agreed to relinquish his right to complainant, on being refunded'the amount advanced. That he would not have relinquished to any other person on the same terms; and that valuable improvements have been put on the *360 place by complainant since the witness sold it. He did not distinctly understand the nature of the agreement between the parties, but was impressed with a belief that Jackson was to be benefitted.
James T. Lewis, a witness, states amongst other things, that he heard a conversation between the parties, during which Jackson asked if he was not to have the land, to which respondent replied, that he had not paid him according to contract. Jackson stated, that he had not been able to get his cotton ginned as he had expected, but proposed to haul it to Major Smith’s gin, to Avhich respondent replied, rather than he should lose his crop, he would wait a little longer. The value of the improvements are proved, and Jackson continued in possession.
A trust is an estate acquired upon confidence that the trustee, who holds the legal title, will dispose of the land according to the intention of the cestui que use, and suffer him to take the profits. Resulting trusts arise by construction, of law, upon the acts of the parties based upon confidence, which equity will enforce without an express trust.
There are some facts in this case which must be considered as decisive in giving the character to this transaction. Jackson was the person who negotiated the contract, not for any other person, but for himself, and he was moreover the meritorious cause, for the witness Phillips testifies, that he was induced to sell to Jackson at the price, in consequence of his having improvements on the land, and that he would not have sold to any other person at the same price. Had it not been for the disposition on the part of Phillips to accommodate Jackson, and to give him the benefit of his improvement, the contract would never have been made on the same terms. Jackson, for the purpose of completing his contract, applied to Governor Runnels to loan him the money; it was refused as a loan, but Runnels proposed to become the purchaser of the land, with an understanding that it should be reconveyed to Jackson on his paying the amount out of his crop of cotton. This proposition was assented to by Jackson, who pledged his word to pay at the time. This was evidently a proposition on the part of Runnels to carry out the contract of Jackson, for there is *361 nothing said about any negotiation between Runnels and Phillips. The understanding of the parties was manifest. Runnels does not profess that he became the absolute purchaser of the land, brrt the title was only vested in him for the purpose of securing the. payment of the money. Jackson, who had made the contract, did not consent to relinquish it on any other condition than that the title should be made to him on his refunding the money; and there can be no question but that Governor Runnels paid the money, and took the title with an intention to reconvey to Jackson, on his complying with his promise. The transaction must have been placed in that shape solely for the purpose of securing the purchase money. The advancement of the money can be considered in no other light than as a loan, for although it was refused as a loan, yet the facts will bear no other construction.
Governor Runnels was strict in exacting a promise that it should be repaid out of the complainant’s crop of cotton, which was to have been taken to Vicksburg for that purpose. The amount to have been paid was the sum advanced by the respondent. It is true, the complainant promised to pay the value of the improvements which had been put on the land; by which, I-presume, is meant improvements that were made before the complainant went into possession. This part of the promise was a nude pact, as it was public land when he took it. Jackson has- remained in possession of the land ever since, making improvements on it, which shows the confidence with which he rested on the terms of the contract. Independent of all this, he had a preemption right to the land, and could have set aside the entry of Phillips.
The arrangement made with Phillips made it unnecessary that he should resort to that right, as he contracted for the land, for the price he would have had to pay the government. Governor Runnels also says in his answer, that he informed complainant that he should hold the land during the fall of 1833, after the complainant had failed to pay. This shows that he did not at first design to hold it, and the intention of the parties at the time of making the contract must govern in its construction.
From this view of the subject it appears to me clear, that at the time of making the contract, Governor Runnels intended to reeon- *362 vey on the payment of his money, and that Jackson looked upon the transaction as intended for his benefit, and expected nothing else but that he would be able-to pay, and get his title in pursuance of the agreement. That Jackson was also the meritorious cause of contract, without whose instrumentality it would not have been made, and in fact, with the individual who made it. That parties should be mistaken in the legal effect of their contracts, is not at all surprising, as every one is not a lawyer, and may know nothing of the rules by which his agreement is to be construed.
This case, on comparison, will be found to differ materially in one or two important features from the case cited by counsel from 2 Johns. Chan. Rep. 405. The main difference arises out of the answer. In the case cited, the defendant admitted in his answer, that the plaintiff had applied to him to borrow a sum of money, to purchase a farm which was to be sold at auction under a mortgage, which the defendant refused, but offered to become the purchaser, and to reconvey on certain conditions which were agreed to. In that case the land was to be sold at all events, and the plaintiff had no agency in procuring the sale, nor was it made that he should be benefited by it, and the land was actually sold to the highest bidder.
." In the case cited the plaintiff also attempted to establish a trust in consequence of the purchase of a lot, which in regard to some of the facts was very much like the present case. Botsford had made a virtual agreement to buy of Elmendorf a lot, but Bots-ford being embarrassed, Elmendorf applied to the defendant to purchase the lot, which he accordingly did, but in his answer denied that.it was done for the benefit of the plaintiff, and denied also that the purchase was made with an understanding with the plaintiff either expressed or implied, and no such fact was proved, It was, however, proved that after these purchases, the plaintiff disclaimed having any interest in the property. The answer of the defendant in that case was materially different from what it is in this. There the-agreement to reconvey was denied; here it is admitted.
The case of Boyd v. McLean, 1 Johns. Chan. Rep. 582, is a *363 case very much resembling the present. The answers are substantially the same, except in one particular. The agreement to reconvey is denied in the case cited, and here it is admitted. Boyd had entered into an agreement with Colden to purchase a lot and took possession under the agreement, but being unable to complete it, applied to McLean for a loan of money for that purpose. The answer denied that the money was advanced as a loan, but avers that Colden offered to sell the lot for cash, and the plaintiff advised the defendant to become the purchaser, which he did and took an absolute title in his own name. The money was paid by the agent of the defendant. It was proved that the money was advanced as a loan, and that the title was so taken to secure the payment. In giving the decision, the chancellor used the following language, which would apply with equal force to the case before us. “ Why, then, or for what purpose were the plaintiffs or one of them present at the execution of the deed and the payment of the money? If they had no concern in the purchase their presence is unaccountable. The plaintiffs were not only present at the purchase, but they were suffered to continue in possession for five years after the purchase, or down to the commencement of this suit, without any agreement for rent, or any demand for use and occupation. These facts (he continues) are natural and consistent with the charge in the bill, but utterly inconsistent with the, allegations in the answer.”
I cannot doubt that the contract as originally made was intended to be beneficial to Jackson. He seems to have been the moving cause with all parties, the seller as well as the purchaser. He had an inchoate right to the land, was in possession and had made improvements; on the confidence that his title would be completed he permitted it to pass for the time to a third person, who by that means was considered as protected for his advances, and who promised to reconvey when he should be repaid. According to the distinct admission of Gov. Runnels, his title in the land was subject to be defeated on a certain condition, and could, therefore, in legal contemplation, be considered only as a security for the payment of a certain sum of money. Such contracts are pecu *364 liarly subjects of equity jurisdiction, where the rights of the parties can be best determined.
. If it be viewed in the light of a conditional contract, as contended for by respondent’s counsel, it would not vary the result. There was no particular time fixed for performance, further than that the money was to be paid out of a particular crop of cotton, which was to be sent to Vicksburg for that purpose. A fair inference would be, that it was to have been sent within the season for shipping cotton. The witness Lewis states, that complainant represented to respondent the difficulty he had met with in getting his cotton ready for market, upon which the respondent agreed to give a further indulgence. How much longer he was to wait does not appear. Contracts of this description, when there is a particular time fixed for performance, if the agreements be mutual and dependent, are rigidly enforced at law, but equity will enlarge’ the time. Time is not always considered of the essence of a contract in equity.
The decree of the chancellor must be affirmed.
Judge Smith concurred.