Honore v. Hutchings.

The following case was misplaced at the time the opinions delivered in October, 1871, were printed, and for this reason it appears at the end, instead of at its proper place in this volume.

CASE 49—PETITION EQUITY—OCTOBER 27, 1871.

# Honore v. Hutchings.

## APPEAL FROM LOUISVILLE CHANCERY COURT.

1. A RESULTING TRUST AND PLEDGE OR MORTGAGE NOT A CONDITIONAL SALE.

Hutchings and Honore in 1861 jointly purchased thirty acres of land near Chicago, Ill. Hutchings advanced the entire purchase-price, took a conveyance to himself, and executed a writing in which, among other things, "it is agreed between said parties that when said land is sold said Hutchings is to have first his six thousand dollars so advanced, and ten per cent. interest, and the profits over and above said sum are to be equally divided between said parties. . . . . This arrangement is to continue eighteen months, when, if the property has not been sold, said Honore is to pay one half the sum so advanced, with the accrued interest, or said Hutchings is to be the sole owner of the same."

The land was not sold within the eighteen months, and Honore failed to pay any part of the sum so advanced. In 1869 Hutchings sold the land for one hundred thousand dollars, and refused to pay any part thereof to Honore. Honore sued Hutchings for one half of the net profits, after deducting purchase-price, interest, etc. *Held that*

A trust resulted in favor of Honore to the extent of one half of the land jointly purchased. This interest he pledged to Hutchings to secure the repayment to him of one half the purchase-price advanced, etc.; and

Hutchings held the legal title to one half of the land in trust for Honore, and the latter is entitled to one half of the net profits realized upon the resale of the same.

2. The conveyance to Hutchings and the condition of defeasance executed by him to Honore must be construed together, as though the one was incorporated into the other. (Powell on Mortgages, 67.)

3. When so construed it appears that the one took an absolute title to the joint property of both, having first executed and delivered to

the other a condition of defeasance. In such a case the onus devolves on the party who insists that the contract was a conditional sale. (Edrington v. Harper, 3 J. J. Marshall, 356.)

4. The contracts show upon their face that Hutchings took the title to secure the payment of the money and the interest that might accrue upon the same. Such an arrangement is perfectly consistent with the idea of a mortgage, and though it may be doubted as to whether or not the absolute conveyance to Hutchings was intended to operate only as such, yet the rule is that in all doubtful cases the law will construe a contract to be a mortgage, because such a construction will be most apt to attain the ends of justice and prevent fraud and oppression. (Skinner v. Miller, 5 Littell, 86.)

5. DISTINCTION BETWEEN A MORTGAGE AND A CONDITIONAL SALE.

Where the debt forming the consideration of the conveyance still subsists, or the money is advanced by way of loan, with a personal liability on the part of the borrower to repay it, and by the terms of the agreement the land is to be reconveyed on payment of the money, it will be regarded as a mortgage; but where the relation of debtor and creditor is extinguished or never existed, there a similar agreement will be considered as merely a conditional sale. (2 Greenleaf's Cruise, note 1, page 74.)

6. *The common law will be presumed to be in force in the state of Illinois*, where the entire transaction in this case took place, as there is nothing in the record showing the contrary.

BARRET & ROBERTS, }
W. P. D. BUSH, . . }　. . . . . . . . For Appellant,

CITED

21 Maine, 195, Smith v. People's Bank.

17 Ohio, 358, Marshall v. Stewart.

37 Illinois, 216, Snyder v. Griswold.

36 Illinois, 339, Roberts v. Richards, &c.

14 Illinois, 428, Miller v. Thomas, &c.

15 Illinois, 519, Davis, &c. v. Hopkins.

21 Missouri, 325, Poindexter v. McCannon.

10 Harris, 171, Woods v. Wallace.

3 Watts, 196, Colwell v. Woods.

3 Atkins, 280, Lowley v. Hooper.

7 Watts, 361, Scott v. Fields.

4 Kent's Commentaries, 145.

2 Story's Equity Jurisprudence, sec. 1018.

3 Dana, 252, Bright, &c. v. Wagle.

3 J. J. Marshall, 355, Edrington v. Harper.

Honore v. Hutchings.

2 J. J. Marshall, 472, Secrist v. Turner.
5 Bush, 47, Martin v. Martin.
6 Dana, 473, Ogden v. Grant.
1 Vern. 190, Howard v. Harris.
2 Vern. 402, James v. Oades.
5 Littell, 84, Skinner v. Miller.
3 Leading Cases (Hare & Wallace's), pp. 624, 625, *et seq.*
7 J. J. Marshall, 217, Bishop v. Rutlege.
1 Dana, 277, Fenwick v. Macy's heirs.
9 Dana, 387, Lobban v. Garnett.
4 Monroe, 45, Ward v. Deering.
4 Monroe, 349, Wilkins's ex'rs v. Sears.
3 Dana, 170, Perkins v. Drye.
2 McMullin's Equity, 1, Walling v. Aiken.
1 Murphy, 117, Wilcox v. Morris.
3 W. and S. 384, Hiester v. Madera.
1 Ohio N. S. 107, Stover v. Rounds.
1 Wisconsin, 527, Rogan v. Walker.
7 Johnson's Chancery, 40, Henry v. Clark.
7 Watts, 261, Jaques v. Weeks.
2 Johnson's Chancery, 182, Dey v. Dunham.
1 Bush, 335, Sandford v. Farmer's Bank, &c.
Powell on Mortgages, page 67.
Saxton, 534, Youle v. Richards.

A. HARRIS, . . . .
E. S. WORTHINGTON,
I. & J. CALDWELL, . .  . . . . . . . . For Appellee,
J. F. & T. W. BULLITT,

CITED

13 Vesey, 224, Adley v. Descamp.
34 Illinois, 40, Milnor v. Willard.
16 Maine, 92, Rogers v. Saunders.
29 Illinois, 196, Grum v. Cook.
13 Illinois, 186, Stephenson v. Thompson.
13 Illinois, 221, Alexander v. Tomms.
16 Missouri, 129, 146, Brant v. Robertson.
44 Illinois, 103, Pitts v. Cable.
12 Howard, 329, Russell v. Southard.
16 Missouri, 129, Brant v. Robertson.
19 Wendell, 518, Glover v. Payne.
23 Maine, 234, Treat v. Strickland.
43 Maine, 565, Mills v. Darling.

44 Illinois, 68, Sheldon v. Harding.
13 Illinois, 576, Kemp v. Humphreys.
21 Illinois, 235, Chrisman v. Miller, &c.
22 Illinois, 655, Steele v. Biggs.
13 Illinois, 227, Perry v. McHenry.
1 New Hampshire, 39, Lund v. Lund.
2 Sumner, 533, Flagg v. Mann.
2 Greenleaf's Cruise, 74, note 1.
1 Sugden on Vendors, 221, note to sec. 24.
3 J. J. Marshall, 353, Edrington v. Harper.
1 Comyn on Contracts, 16.      4 Kent's Com. 144.
1 Duvall, 95, Magoffin v. Holt.
3 Bush, 694, Jones v. Noble.
6 Wheaton, 539, Brashear v. Gratz.
1 Douglass, 527, The Michigan Bank v. Hammond.
4 Beavan, 197, Perry v. Meddowcroft.
1 Hilliard on Mortgages, 69.
7 Cranch, 218, Conway's ex'r v. Alexander.
7 Monroe, 232, Davis v. Phelps.
1 Allen, 107, Murphy v. Calley.
4 Denio, 493, Baker v. Thrasher.
8 Paige, 254, Holmes v. Grant.
2 Edward's Chancery, 147, Robinson v. Cropsey.
1 Bland's Chancery Rep. 206.      6 Paige, 480.
3 Watts, 96, Colwell v. Woods.
3 Hawkes, 423, Streaton v. James.
3 Howard, 126, Morris v. Nixon.
5 Littell, 84, Skinner v. Miller.
2 J. J. Marshall, 471, Secrist v. Turner.
3 Dana, 471, Bright v. Wagle.
7 Connecticut, 143, Reading v. Weston.
2 Yerger, 6, Bennett v. Holt.
1 Bland's Chan. Rep. 206, Chase's case.
3 Michigan, 487, Swetland v. Swetland.
1 Dev. Equity, 377, Poindexter v. McCannon.
1 Sandford's Chan. Rep. 73, Brown v. Dewey.
1 J. J. Marshall, 341, Hopkins v. Stephenson.
9 California, 538, Low v. Henry.
4 J. J. Marshall, 594, Letcher v. Letcher.
2 Story's Equity Jurisprudence, section 1202.
2 Gilman, 334, Andrews v. Sullivan.
5 Gilman, 314, Smith v. Brown.
1 Johnson's Chancery, 370, Benedict v. Lynch.
Newland on Contracts, 152, 153.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

H. H. Honore, who was a real-estate agent in the city of Chicago, Illinois, and Eusebius Hutchings, a citizen of Louisville, Kentucky, having negotiated with one Tiernan for the purchase of an undivided moiety of a tract of sixty acres of land situated near the city of Chicago, agreed that the title to the same should be conveyed to Hutchings for the reasons and purposes set out in a paper executed and delivered by Hutchings to Honore on the 18th day of November, 1861. Said paper is in the following words:

"Mr. E. Hutchings has this 18th day of November, 1861, *bought jointly* with H. H. Honore the undivided half of sixty acres of land in section 13, township 39, range 13, from Mr. Tiernan for the sum of six thousand dollars, the whole of which sum the said Hutchings is to pay, and takes the title and control of the property *to secure himself for said sum of six thousand dollars and ten per cent. interest* that may accrue upon the same until the land is sold.

"It is agreed between said parties that when said land is sold said Hutchings is to have first his six thousand dollars *so advanced, and ten per cent. interest,* and the profits over and above said sum are to be divided equally between said parties. The parties are to pay equally the taxes or any assessments that may be levied upon said land, and the parties propose to sell said land when a satisfactory price to said Hutchings can be obtained. This arrangement is to be continued eighteen months, when, if the property has not been sold, said Honore *is to pay one half the sum so advanced, with the accrued interest,* or said Hutchings is to be the sole owner of the same.

[Signed]     E. HUTCHINGS."

The evidence in the case conduces to show that the land was bought upon very favorable terms, and that the parties making the purchase had every reason to believe that a great speculation had been secured. It can not be doubted but that

it was through the exertions and superior information of Honore that the investment, which eventually turned out even more profitable than could reasonably have been expected by either party, was made. During the first two or three years after the purchase lands in the vicinity of Chicago did not advance in value as rapidly as had been anticipated, and no sale was made within the stipulated time. Honore, who appears to have been greatly embarrassed, failed to pay one half of the purchase-price and the accrued interest thereon, as he had agreed to do, and Hutchings insists that by reason of such failure he forfeited the interest secured to him in the purchase by the writing before set out; and when Honore applied to him, some time after the expiration of the eighteen months, for an extension of time within which to make the agreed payment, he declined to accede to the proposal, and claimed that he was then the sole owner of the land.

In pursuance to the written agreement Hutchings, on the 31st day of December, 1861, caused the land to be conveyed to himself. In February, 1869, he sold it for one hundred thousand dollars in currency.

Honore instituted this suit against him, claiming that under the terms of their purchase he was *a joint owner* with him in the land purchased, and entitled to one half of the net profits realized in the speculation. His petition was dismissed, and he has appealed to this court.

The legal title to the land having been conveyed to Hutchings, the first question to be determined is whether or not the written agreement executed by him to Honore so far modified the legal effect of this conveyance, made with the knowledge and consent of the latter, as to raise by implication of law a trust in his favor to the extent of one half of the land. The entire transaction took place in the state of Illinois, and as there is nothing in the record showing the contrary we must presume that the common law is in force in that state.

By the common law implied trusts are generally raised upon the supposed intention of the parties, as gathered from their language and conduct, or from the nature of the transaction between them.   If the conveyance be made to one person and the purchase-money paid by another, a trust results by implication of law in favor of the person who pays the money. So likewise if the conveyance be made to one and the purchase-price in part paid by another, a resulting trust is raised in favor of the latter to the extent of such payment.   In this instance, however, it is insisted that no part of the purchase-money was paid by the appellant, and that he does not come within the reason of either of the foregoing equitable rules. But it is equally well established that if a joint purchase be made in the name of one party, and the other *secures to be paid* his share of the purchase-price, he will be entitled to his proportion of the property purchased as a resulting trust. (Wray v. Steele, 2 Ves. & Bea. 388; Tiffany and Bullard on Trusts and Trustees, 97.)

In the case of Boyd v. McClain (1 Johnson's Chancery, 582) Chancellor Kent goes even further than this.   In that case the party to whom the conveyance was made paid the entire purchase-price, yet the chancellor permitted the fact to be established by oral testimony that he took the title to secure the repayment of the same, it having been loaned to the real purchaser, and held that a trust resulted in favor of the latter by implication of law.   In this case we have written evidence that Hutchings bought the land jointly with Honore; that Honore *secured to be paid* his share of the six thousand dollars, the purchase-price, and ten per cent. interest thereon, which sum had been *advanced* by Hutchings on the joint purchase of himself and Honore; that the parties were to share equally the profits realized on the resale of the land, and to bear equally the taxes and assessments that might be levied against the same, and that when sold it was to be sold by

"the parties," are circumstances which of themselves are sufficient to establish the joint ownership of the litigants, even if Hutchings had not over his own signature stated that such was the fact.

It therefore becomes necessary to determine the legal effect of the condition of forfeiture contained in the writing upon which Honore relies to support his claim to one half of the net profits realized from the speculation. It was agreed that in case the land was not sold at the end of eighteen months he was to pay one half of the sum advanced, with the accrued interest, or Hutchings was to be the sole owner of the land.

If it can be gathered from this that Honore took no vested interest in the land under the purchase from Tiernan, but was merely the agent of Hutchings to sell, and was to receive one half of the net profits as compensation for his services in making the sale, then it follows that the contract between the parties was in the nature of a conditional sale from Hutchings to Honore, and as time is of the essence of such contracts, the failure of Honore to make prompt payment of the stipulated amount puts it out of the power of a court of equity to afford him relief. But to give such a construction to this latter clause not only makes it repugnant to the remainder of the agreement, but makes it override and nullify every other stipulation or provision contained in the entire writing.

As we have before stated, a trust resulted in favor of Honore to the extent of one half of the land jointly purchased. This interest he pledged to Hutchings to secure the repayment to him of one half of the purchase-price advanced. In pursuance to their agreement Hutchings took the title to the land and was allowed to control the same. But the conveyance of Tiernan and the writing executed by Hutchings constitute in law but one instrument, and must be construed together as though the one was incorporated into the other. (Powell on Mortgages, 67.) When so construed it appears

that the one took an absolute title to the joint property of both, having first executed and delivered to the other a condition of defeasance. In such a case the onus devolves on the party who insists that the contract was a conditional sale. (Edrington v. Harper, 3 J. J. Marshall, 356.)

The contracts show upon their face that Hutchings took the title to secure the payment of the money and the interest that might accrue upon the same. Such an arrangement is perfectly consistent with the idea of a mortgage, and though we may doubt as to whether or not the absolute conveyance to Hutchings was intended to operate only as such, yet the rule is that "in all doubtful cases the law will construe a contract to be a mortgage, because such a construction will be most apt to attain the ends of justice and prevent fraud and oppression." (Skinner v. Miller, 5 Littell's Reports, 86.)

We do not regard it as material that Honore was insolvent and that Hutchings took no other security for his money than the land itself; nor that, under our construction of the contract, in case the property decreased in value, it was optional with Honore whether he would pay or not, and if he failed to pay that Hutchings would be without remedy as to his share of the loss. This circumstance is not conclusive, nor even very formidable. In the case of Edrington v. Harper, before cited, it was expressly agreed that it should be optional with the mortgagors whether they would repay the money advanced or not, and yet the court held that this being virtually the fact in every mortgage as to whether the condition should be forfeited or not, it could not have the effect of converting what would otherwise have been a mortgage into a conditional sale.

The distinction between a conditional sale and a mortgage, as drawn by Greenleaf, is that "where the debt forming the consideration of the conveyance still subsists, *or the money is advanced by way of loan,* with a personal liability on the part

of the borrower to repay it, and by the terms of the agreement the land is to be reconveyed on payment of the money, it will be regarded as a mortgage; but where the relation of debtor and creditor is extinguished, or never existed, there a similar agreement will be considered as merely a conditional sale." (2 Greenleaf's Cruise, note 1, page 74.)

In this case Hutchings advanced the money by way of a loan to his co-purchaser, Honore, who is personally liable to repay it with interest at the rate of ten per cent. per annum, and had he done so before the land was sold, would have been entitled to a conveyance of the one half held in trust for him by Hutchings. The fact that Hutchings was to have *interest* on the money advanced tends very strongly to show that it was a loan (Colwell v. Wood, 3 Watts, 196), and would perhaps warrant that conclusion even if the fact was left in doubt by the terms of the written memorandum of agreement.

It is further insisted that Honore, being the agent of Tiernan, could not have become a joint owner of the land; that the policy of the law forbade him from selling to himself. In all cases in which the agent has discretion as to the price, or where the principal relies upon his knowledge or information as to the value of the property, and expects him to sell for what in his opinion the same is worth, this rule should be inflexibly enforced. But in this case Tiernan, the principal, was a real-estate agent himself, doing business within a short distance of the property sold, and well acquainted with its value. He fixed the price at which it was to be sold, and offered to sell to Honore, or any one else whom he could find, at the price so fixed. Through the exertions of his agent he secured the sale of his property at the price fixed by himself, and as *he* does not complain, so far as it appears from this record, of bad faith or unfairness upon the part of Honore, there can be no good reason why Hutchings should be allowed to make available any such defense.

Hence we conclude that Hutchings held the legal title to one half of the Tiernan land in trust for Honore, and that the latter is entitled to one half of the net profits realized upon the resale of the same. In the settlement of the accounts between the parties Hutchings should be credited with the six thousand dollars advanced, with interest at the agreed rate from the time it was paid up to the sale of the land; also with all other amounts paid by him on account of taxes or other assessments against the land, or of other necessary and proper expenses incurred and paid by him in the management of the same, with legal interest on each amount from the time of payment up to the sale; and in these expenses should be included such sum as he may have paid John M. Tiernan for choice of lots when the sixty-acre tract was divided. He should also be credited with such reasonable and proper fees or commissions as he may have paid to his agent for negotiating the sale of the land. It appearing that the land was sold for currency, the payments which Hutchings may have collected should be scaled to their actual value in coin at the time of collection.

The judgment of the court below is reversed, and the cause remanded for further proceedings consistent with this opinion. And to prevent further and unnecessary litigation either party who desires should be allowed to amend his pleadings so as to properly present the issues indicated, and a reasonable time within which to take further proof, in case the same may be necessary under the amended pleadings.

In this case Judge HARDIN did not sit.

To THE PETITIONS OF COUNSEL OF APPELLEE FOR A REHEARING, JUDGE LINDSAY DELIVERED THE FOLLOWING RESPONSE OF THE COURT.

The learned counsel for appellee, in their petitions for a rehearing of this appeal, assume that the contract between Hutchings and Honore, evidenced by the writing bearing date

November 18, 1861, was a conditional purchase by the latter of one half of the tract of land afterward conveyed by Tiernan to Hutchings.

In our opinion this assumption is not warranted by the facts presented by the record. On the day the writing was executed Hutchings did not own said land, but, upon the contrary, on that day he, in conjunction with Honore, became the purchaser of the same from Tiernan. There was no sale or purchase, absolute or conditional, between the two contracting parties; the exact character of their contract of purchase from Tiernan is not disclosed by the record. We have no means of knowing whether it merely existed in parol or was evidenced by writing; but whatever claim they had to the land was a joint one, each taking as an equal owner, and neither one of them having the power to sell to the other an undivided moiety without divesting himself of his entire interest. It is clear that Hutchings still owned one half of the land after his contract with Honore, and it therefore necessarily results that no sale could have been made. The writing was not intended to evidence a sale, but to explain why it was that Honore, who, under the contract with Tiernan, was entitled to one half of the land, was to permit Hutchings to take the conveyance of the entire tract to himself. The numerous decisions of the Supreme Court of Illinois, to which we have been referred, were rendered in cases involving questions growing out of conditional purchases; and the doctrines of those decisions do not essentially differ from those to which this court has uniformly adhered.

In the case of Greene v. Cook (24 Illinois Reports, 190) the facts were that Green entered the land and paid his own money for it, and took the patent out in his own name, and agreed to sell it to Cook upon condition that he would pay him an amount agreed upon as the purchase-price on or before a certain day. Cook failed to make the payment, and a second

contract was made, a different price agreed upon, and another day fixed for the payment. The transaction was held to be a conditional sale. In that case Cook was not the original purchaser of the land, although Greene entered it under an agreement that he would give a bond to him for a conveyance upon the payment of the sum agreed upon by the parties within a stipulated time. Greene did not lend to Cook the money or the land-warrant with which to pay for the land, and take the title as security for its repayment. In the language of the court, "nothing was said or done to indicate such a design." In addition to this fact, after the time first agreed upon had expired, a new contract was made by which Cook abandoned all claim to the land under the first arrangement, and became a purchaser in the broadest and most comprehensive sense in which that term is used.

The contract in the case of Milnor v. Millward (39 Illinois, 40) was clearly a purchase upon condition of prompt payment of the agreed price. The agreement in the case of Brashear v. Gratz (6 Wheaton, 529) was also a contract of sale and purchase, and the suit was prosecuted by the party in default to enforce a specific execution of the contract. We have not been able to procure the case of Perry v. Meddowcroft (4 Beavan); but if it goes as far as stated by Hilliard, the principle is in conflict with the decision of Chancellor Kent, in the case cited of Boyd v. McClain (1 Johnson's Chancery Reports), which decision we regard as in perfect accord with the reason and philosophy of the rules of law governing such transactions.

The opinion originally delivered does not admit of the construction placed upon it by counsel, that we regarded it as optional with Honore whether or not he would pay half of the purchase-price. By disconnecting one paragraph from the remainder of the opinion, and considering that paragraph isolated and alone, such a conclusion might possibly be reached;

but when the context is considered we think it will be manifest to any one that we not only meant to convey no such idea, but stated expressly that Honore was personally liable to repay the loaned money with interest at the rate of ten per centum per annum.

Nor do we decide that the trust in favor of Honore was created by the contract between him and Hutchings, but that by implication of law a trust resulted in his favor because of the existence of certain facts, among others that he was a joint purchaser of the land, that Hutchings advanced the money necessary to pay his half of the purchase-price by way of a loan to him, that he was personally liable to repay this money with ten per cent. interest, and that he consented that Hutchings should take and hold the legal title to his share of the land to secure him, on account of his advancement, and the interest agreed to be paid thereon. If these facts are established by the record, and we feel satisfied that they are, then the party claiming to be the *cestui que trust* did pay all of his share of the purchase-money, and, according to the Illinois decisions cited, a trust was raised in his favor by implication of law.

A careful reconsideration of the cause, and a patient investigation of the authorities to which we have been referred, have failed to convince the court as now constituted that the opinion as delivered in January last does not settle the questions involved in accordance with the well-established principles of equity, and we are therefore constrained to overrule the motion for a rehearing as well as that of the appellant for a modification of said opinion.

Judge HARDIN did not sit in this case when it was decided, and did not participate in the action of the court in passing upon these motions.