WILLIAM C. TENNEY, *et al.*, v. S. N. SIMPSON.

PROPERTY, *Held in Trust for Copartnership.* Where S., having the exclusive right, by previous written agreement with the owner of a certain piece of land, to purchase the same, entered into a parol agreement with T. and B., in pursuance of which B. furnished the purchase-money for the land, T. gave his notes therefor to B., and the deed by consent of the parties was executed by the owner to B. as a security for the repayment of the purchase-money to B., and the land was purchased by S., T. and B. on speculation, and for the purpose of sale and profits only, and not for permanent use; and after the payment of the purchase-money and of the costs and expenses out of the proceeds of the sale, the profits were to be divided between the partners, S., T. and B. as follows: S. was to have four-tenths, T. three-tenths, and B. three-tenths; and after a portion of the land was sold, and the purchase-money and costs and expeness paid, T. and B. terminated the copartnership, refused to sell anymore land, and refused to permit S. to have any further connection therewith: *Held,* That when the deed was executed to B., he held the property in trust for the copartnership; and afterward, when the copartnership was terminated, he held it in trust for the individual members of the copartnership, S. being entitled to four-tenths thereof.

*Error from Wyandotte District Court.*

THIS case was tried before a referee, who made the following report (court and title omitted):

"This is an action wherein the plaintiff claims that certain land known as the 'Splitlog purchase,' bought in 1878 through the united efforts of plaintiff and defendants, was deeded to defendant M. Shepard Bolles, to be held by him in trust for plaintiff and defendants after certain payments should be made

23—37 KAS.

to him, in proportion of four-tenths to plaintiff S. N. Simpson, three-tenths to defendant William C. Tenney, and three-tenths to defendant M. Shepard Bolles acting for himself, Henry Shepard and Richard F. Bolles, known as Boston parties.

"In August, 1878, plaintiff procured from Matthias Splitlog, an Indian, the owner of the land first described in plaintiff's petition, the option or right to purchase in his own name during the following sixty days said land at $200 per acre, paying at the time to Splitlog $100, which was to be forfeited at the expiration of said sixty days, if plaintiff failed to pay said purchase-price. The agreement granting to plaintiff this 'option' was in writing, acknowledging the receipt of $100 from plaintiff, was read in presence of plaintiff and defendant William C. Tenney, and was signed by Splitlog in their presence. Plaintiff, not having the money with which to consummate the purchase, entered into negotiations with defendant William C. Tenney, whereby it was agreed between them that Tenney should go east for the purpose of securing money with which to pay the purchase-price for said real estate, the profits arising from such purchase to be divided between plaintiff, defendant, and parties furnishing stipulated purchase-price. Tenney went to Boston, secured the services of M. Bolles & Co., brokers, and through their influence obtained a promise of the said purchase-price from defendants M. Shepard Bolles, Henry Shepard and Richard F. Bolles, known as Boston parties, upon stipulated terms, written by M. Shepard Bolles in Boston, though not signed by him, which stipulation was brought by defendants and Henry Shepard and Richard F. Bolles to Kansas City in November, 1878, who came west to examine said land and its title, and having examined said land in company with plaintiff and said Tenney, and being satisfied as to its title, they required said Tenney to agree to said stipulation, which he did in writing indorsed upon said stipulation, and thereupon made provision by which he should receive $6,300 with which to pay Splitlog. This was done November 23, 1878, and before these sixty days above referred to had expired the $100 paid Splitlog had been forfeited. Plaintiff had paid Splitlog $50, and had thereby secured an extension of the 'option' for thirty days longer, which was also forfeited, and plaintiff had by payment of $50 obtained an extension of said 'option' for thirty days longer. All this money paid for these 'options' was furnished by Tenney to Simpson, and was taken into consideration in connection with

the actual cost of the land, together with some other expenses in fixing upon the sum of $6,300.

"The stipulation referred to is known as 'Exhibit A,' attached to the deposition of Richard F. Bolles. It provided that the deed for said land should be made to defendant M. Shepard Bolles, who should give a bond for a quitclaim deed when said land should be paid for in full; that defendant William C. Tenney should execute his notes to defendant M. S. Bolles, one for the purchase-price, which, with forfeited options and other expenses, amounted to $6,300, payable in two years, with interest at ten per cent., payable semi-annually; two notes for $1,000 each, payable in one and two years without interest; these notes represented guaranteed profits to said eastern parties for their investment in said real estate; that said Tenney should execute two notes for $500 each, payable in five and seven months respectively, without interest, to M. Bolles & Co., brokers, to secure payment to them for their services in procuring money for the purchase-price from defendants known as Boston parties M. Shepard Bolles was to quitclaim such streets and alleys as might be agreed upon to the city of Wyandotte; one-fourth of the money received from sales of land was to be retained by said William C. Tenney, and the remaining three-fourths were to be remitted to said M. S. Bolles to be applied by him on notes of said Tenney to M. S. Bolles as he, Tenney, might direct. The profits resulting from the purchase and sale of said land, after deducting all costs, expenses and interest were to be divided as proposed by said Tenney, as follows: Four-tenths to Mr. S., so called, whom by the evidence is shown to be the plaintiff; three-tenths to W. C. Tenney, defendant, and three-tenths to defendant M. S. Bolles, who by the evidence is shown to represent himself, Henry Shepard and Richard F. Bolles, known as Boston parties. This stipulation was signed by William C. Tenney, November 23d, 1878, in presence of defendants Henry Shepard and Richard F. Bolles, and over his name was written, 'I agree to the above articles on the above conditions.'

"Acting under the provisions of said stipulation and parol agreements with said Tenney, S. N. Simpson, on the 3d day of December, 1878, surrendered his rights under the agreement made by Splitlog to him, and caused Splitlog and wife to execute and deliver a warranty deed to said land to defendant M. Shepard Bolles; and acting under the same provisions said W. C. Tenney executed his promissory note, of the same

date, to M. S. Bolles, trustee, or order, for $6,300, payable with interest as required in said stipulation, and executed one $1,000 note to said M. S. Bolles, trustee, or order, and another $1,000 note to said M. S. Bolles, payable as required in said stipulation, and two notes for $500 each, payable in five and seven months respectively, to M. Bolles & Co., as required in said stipulation.

"The evidence shows that these notes were signed by W. C. Tenney because M. S. Bolles, representing himself and the two other Boston parties, and who managed that branch of the business, desired to open accounts with but one person here in connection with the land.

"On the 11th day of December, 1878, a few days after the execution of said deed, M. S. Bolles wrote a letter to Tenney, a copy of which is known as 'Exhibit E,' attached to the deposition of M. S. Bolles, explaining the condition under which he held the land so conveyed to him. He there says that he holds the 'Splitlog purchase' as trustee, to secure those who have furnished money; and that after the purchase-money and all other liens against the property should be satisfied, then that he held the property for the benefit of all parties concerned, profits of sales there made to be divided as follows, viz., seven-tenths to be remitted to W. C. Tenney for himself and his asso-ciate, who is shown by the evidence to be plaintiff S. N. Simpson, and three-tenths to be retained by him for Boston parties; and in that letter he defines the word profits as meaning the net gain after charging all costs, expenses and interest to the land.

"While negotiations were going on in Boston between Tenney and the Boston parties for the purchase-money, the correspondence and telegrams from Tenney to Simpson show that Tenney considered Simpson, with his option from Splitlog, as a pivotal factor in closing the purchase of the land, and that he regarded the consent of Simpson to any changes in arrangements before that time had between them as to division of profits as indispensable before he could terminate his negotiations with the Boston parties, and after his return to Kansas City, from his letter to M. S. Bolles ('Exhibit D' to deposition of M. S. Bolles), dated October 2, 1878, wherein he refers to plaintiff as Mr. 'S.' and as his associate, it becomes manifest that the relation of plaintiff to the purchase of this land must have been known by M. S Bolles, acting for himself and other Boston parties, and this conclusion is confirmed by said stipulation written by M. S. Bolles referring to said letter of October 2, 1878, and brought by defendants Henry Shepard and

R. F. Bolles to Kansas City, and signed and agreed to by Tenney, in their presence, November 23, 1878.

After the purchase of the land a portion of it was platted and laid out as Riverview and Bolles's addition to Riverview, and a large number of lots were sold under the special supervision of plaintiff; the proceeds of sales were turned over to W. C. Tenney, who made warranty deeds to purchasers, receiving quitclaim deeds to himself from M. S. Bolles for lots so conveyed by him to purchasers under the general management of W. C. Tenney, who kept the books and supervised the business affairs of the enterprise in the interest of all parties concerned, and under the special supervision of plaintiff in platting and laying out the land, and in making sale of the property, and turning over the proceeds to W. C. Tenney. The business was conducted until June 15, 1883, when a settlement was made, on the basis of the stipulation written by M. S. Bolles heretofore referred to. From the proceeds of sales of lots the $6,300 note and the two notes of $1,000 each were paid as required in said stipulation; as four-tenths profits arising from said sales, plaintiff was paid $2,866.28; as three-tenths of said profits, defendant Tenney was paid $2,149.71; and as a part of their three-tenths of profits, the Boston parties were paid through M. S. Bolles $2,000. Simpson and Tenney each paid one-half of the two notes for $500 each, executed by Tenney to M. S. Bolles & Co. as heretofore stated.

"After June 15, 1883, and before the commencement of this action, defendant Tenney refused to make any further settlement with plaintiff, and refused to permit further sales of lots to be made. It is said that the purchase-money for the land was furnished upon the sole credit of Tenney, as his notes were taken for the same. From all the facts before me I conclude that the purchase-money, with forfeited options and expenses amounting to $6,300, was furnished by the Boston parties on the faith they had in the land as an investment, under the written stipulation of M. S. Bolles, and that the notes for the same and $2,000 guaranteed profits were taken from defendant Tenney for the convenience of M. S. Bolles in having but one person with whom to keep an account in reference to this land, and for the reason that it was desired that no question should ever be raised as to how much they should receive in return for the investment before any profits should accrue in favor of plaintiff or Tenney. That question was settled by the stipulation and the notes. It was not $6,300 purchase-money alone that was taken into consideration when

said stipulation was written by M. S. Bolles and agreed to by Tenney: the influence of Simpson in obtaining the 'option;' the $500 to be paid by him to M. Bolles & Co., and his personal services to be rendered in the future; the services of Tenney in Boston and elsewhere; the $500 paid by him to M. Bolles & Co., and his personal services to be rendered in the future—all these considerations were placed on the scales with the purchase-money, and the parties to this action have relieved me of a difficult problem to solve by determining the relative value to be four-tenths for Simpson, three-tenths for Tenney, and three-tenths for Bolles representing Boston parties.

"It is said that plaintiff is not entitled to relief until the land is sold and the profits are ready for distribution. The refusal of Tenney after June 15, 1883, and before the commencement of this action, to settle with Simpson and to permit a further sale of lots, and the fact that the refusal of Tenney was the refusal of the Boston parties, as the evidence shows that Tenney acted as their agent in matters connected with their interest in the land, leads me to conclude that the plaintiff is entitled to relief in this action. It is said that the profits spoken of meant the net gain after sales are made. The profits in this transaction are not necessarily made up of results of sales, but consist of whatever property may remain after the purchase-money, expenses, costs, interest, and liens on property are paid.

"In making legal conclusions in this case, it is necessary to determine the intention of the parties thereto. We have no written contract signed by all the parties to guide us. What they said, and their acts previous to and at the time of the execution of deed, give abundant light as to their intention. 'Exhibit A' to deposition of R. F. Bolles, 'Exhibit D' to deposition of M. S. Bolles, with many other facts existing previous to the execution of the deed, lead me to conclude, from the acts, conduct and words of the parties to this action, that it was their intention that the execution of the deed from Splitlog and wife to Bolles should result in a trust for all parties to this action, after payments heretofore referred to should be made. 'Exhibit E' to deposition of M. S. Bolles, and the acts, conduct and words of all parties to this action for nearly five years after the execution of said deed, corroborate the facts existing before its execution, and confirm my conviction and compel me to conclude that this deed conveyed said real estate to M. Shepard Bolles in trust for all parties to this action; said trust resulting to the parties, after payments heretofore

mentioned were made, in proportion of four-tenths to plaintiff, S. N. Simpson, three-tenths to defendant William C. Tenney, and three-tenths to M. Shepard Bolles, Henry Shepard and Richard T. Bolles. At the settlement, June 15, 1883, the following is a statement as to profits:

M. S. Bolles, for himself and Boston parties, received........$2,000 00
William C. Tenney received................................. 2,149 71
S. N. Simpson received..................................... 2,866 28

"At the commencement of this action there were in Tenney's hands, proceeds of sales since June 15, 1883, unsettled —

In cash....................................................$240 58
In notes afterward collected................................ 272 35

Total....... ........................................$512 93

"Of this amount M. S. Bolles should be paid for himself and Henry Shepard and Richard F. Bolles, in order to give them three-tenths up to June 15, 1883, equalizing their profits with other parties — $149.71. This would leave in Tenney's hands to be divided as per stipulation, $363.22. But since the commencement of this action —

Tenney has paid expenses.................................. $591 51
There are unpaid taxes of 1884............................ 192 69
Amount due for deposition, Bolles v. Splitlog............... 25 00
Amount due attorney's fees, Bolles v. County Treasurer....... 25 00

Total........................................... $834 20

Deducting the amount on hand after paying deficiency to make
Bolles's profits as stipulated............................ $363 22
And there is indebtedness against land of.................. 470 98
Four-tenths of which must be paid by Simpson.............. 188 39
Three-tenths of which must be paid by Tenney.............. 141 29
Three-tenths of which must be paid by Boston parties....... 141 29

"I therefore find that the deed to M. Shepard Bolles by Matthias Splitlog and wife for thirty and sixty-three hundredths acres described in plaintiff's petition, conveyed said land to him in trust for plaintiff and defendants in accordance with the findings above made, and that the portion remaining unsold and unaccounted for in Exhibit No. 5, in the evidence of W. C. Tenney, should be divided between the parties to this action, and should be held and owned by them in severalty, in proportion of four-tenths for plaintiff, S. N. Simpson, three-tenths for defendant W. C. Tenney, and three-tenths for M. S. Bolles, Henry Shepard and R. F. Bolles, subject to payment of $188.39 by S. N. Simpson as a lien upon his portion of said land, subject to payment of $141.29 by W. C. Tenney as a lien upon his portion of said land, and subject to payment

of $141.29 by M. Shepard Bolles, Henry Shepard and R. F. Bolles as a lien upon their portion of said land.

December 1, 1885.    W. T. JOHNSTON, *Referee.*

"Exhibit E," above referred to, reads as follows:

"BOSTON, 11th December, 1878.

"*William C. Tenney, Kansas City, Mo.*—DEAR SIR: As trustee I hold the 'Splitlog purchase' of land to secure those who have furnished money, and after the purchase-money and all other liens against the property have been satisfied, then I hold the property for the benefit of all concerned, the profits of sales then made to be divided as follows: 70 per cent., or seven-tenths, to be remitted to you for yourself and associate, 30 per cent., or three-tenths, to be held by me for those in interest here.   By profits I mean the net gain after charging all costs, expenses and interest to the land; no charge against the land for expense or cost of any kind to be allowed without the items and amounts are first approved by me.

Yours truly,    M. SHEPARD BOLLES."

Upon the foregoing report the court, at the December Term, 1885, rendered judgment that the property be partitioned, giving to plaintiff, *Simpson,* four-tenths thereof; to defendant *Tenney* three-tenths thereof, and to the other defendants three-tenths thereof.   The defendants bring the case here.

*Stevens & Stevens,* and *John Hutchings,* for plaintiffs in error.

*Alden & McGrew,* and *John B. Scroggs,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: In the latter part of the year 1878, Samuel N. Simpson, William C. Tenney, and M. Shepard Bolles — the latter representing himself and Henry Shepard and Richard F. Bolles — formed a copartnership to purchase and sell on speculation, a certain piece of real estate consisting of 30 and $\frac{63}{100}$ acres, situated near Wyandotte city, in Wyandotte county, Kansas, and belonging to Matthias Splitlog.   Simpson at that time and prior thereto, by a written contract with Splitlog, had the exclusive right to purchase the property, but he did not have

the money with which to do so; and for this reason he entered into the copartnership aforesaid. The price to be paid for the land was $200 per acre. Under this partnership arrangement, and in pursuance thereof, M. Shepard Bolles furnished the money with which to pay for the property, and also furnished some other money to pay incidental expenses, amounting in the aggregate to $6,300. He took a promissory note from Tenney to himself for this amount, and also took two other notes from Tenney to himself for $1,000 each, for guaranteed profits on the property, and also took two other notes from Tenney to M. Bolles & Co. for $500 each, for the services of M. Bolles & Co. in procuring the foregoing money. The entire notes in the aggregate amounted to $9,300. By agreement of the partners the deed for the land was executed by Splitlog to M. Shepard Bolles, for the purpose, first, of transferring the title to the property from Splitlog to one of the partners in interest, to wit, M. Shepard Bolles; and second, to secure the payment of the aforesaid promissory notes. The deed was executed on December 3, 1878. The profits of this speculation, or transaction, after paying the purchase-money and all the costs and expenses connected with or concerning the partnership, were to be divided as follows: Four-tenths to Simpson; three-tenths to Tenney; and three-tenths to M. Shepard Bolles, for himself and those whom he represented. All these matters are set forth in much greater detail in the special findings made by the referee and reported to the court below. Bolles, and the parties whom he represented, resided in Boston, Mass., while Tenney and Simpson resided in Kansas.

After the purchase of the foregoing land, a portion of the same was platted into lots, streets, alleys, etc., and a large number of the lots were sold under the special supervision of Simpson; and Bolles then executed quitclaim deeds therefor to Tenney, and Tenney executed warranty deeds to the purchasers. All this was in accordance with their previous partnership agreement. From the proceeds of these sales, all the foregoing notes to M. Shepard Bolles, and all the expenses connected with the partnership business, were paid; and Simp-

son and Tenney paid the two five-hundred-dollar notes to M. Bolles & Co., each paying one-half thereof. After this, and after June 15, 1883, and not before, but before this action was commenced, Tenney, acting for himself and the Boston parties, refused to permit any further sales, or to permit Simpson to have any further connection with the property.

This action was commenced on January 17, 1884, by Simpson against the other parties, to wit, William C. Tenney, M. Shepard Bolles, Henry Shepard, and Richard F. Bolles, to have Simpson's interest in the property declared, and for partition of the property. Upon the findings of the referee, the court below rendered judgment in favor of Simpson, and that the property be partitioned, giving to Simpson four-tenths thereof; and to reverse this judgment the defendants, as plaintiffs in error, bring the case to this court for review. They claim that Simpson has no interest whatever in the property. They claim that by virtue of the deed from Splitlog to M. Shepard Bolles, the entire title to the property was transferred and is vested in M. Shepard Bolles alone; that no legal or valid *express trust* has ever been created in favor of Simpson, for the reason that no writing creating the same has ever been executed; and that no *resulting trust* has ever been created in favor of Simpson, for the reason that Simpson did not make any actual payment of the purchase-money for the property to Splitlog, nor agree to pay the same, nor incur any absolute obligation therefor, but that the same was wholly and entirely paid by the other parties. And they further claim that no trust of any kind has ever been created or has arisen by operation of law, in favor of Simpson — no constructive trust, no implied trust.

We think the plaintiffs in error (defendants below) misconceive the law of this case. It may be true that no valid express trust has ever been created in this case; and it is certainly true that no resulting trust nor any implied trust can be created except upon a sufficient consideration; but the consideration need not in any case pass directly from the *cestui qui trust*, or beneficiary, to the grantor of the land. (*Rose v. Hay-*

*den,* 35 Kas. 106; *Kendall v. Mann,* 93 Mass. [11 Allen] 15; *Runnels v. Jackson,* 2 Miss. [1 How.] 358; *Soggins v. Heard,* 31 Miss. 426; *Honore v. Hutchings,* 8 Bush, 687; *Page v. Page,* 8 N. H. 187; *Kelly v. Johnson,* 28 Mo. 249; *Millard v. Hathaway,* 27 Cal. 140, 141; *Sandfoss v. Jones,* 35 id. 481; *Buck v. Pike,* 11 Me. 9; *Lounsbury v. Purdy,* 18 N. Y. 515; and other cases hereafter cited.) Besides, the transaction in the present case was a partnership transaction, and in such cases real property may usually be considered in nearly the same manner as personal property, and the real intention of the parties with reference thereto, their contracts, promises or mutual understandings will govern, without reference to whether they have been reduced to writing, or not. (*Marsh v. Davis,* 33 Kas. 326; *Morrill v. Colehour,* 82 Ill. 619; *Knott v. Knott,* 6 Ore. 142; *Collins v. Decker,* 70 Me. 23; *York v. Clemens,* 41 Iowa, 95; *Clark's Appeal,* 72 Pa. St. 142.) In such cases the statute of frauds and kindred statutes have no application. In 2 Story Eq. Jur., § 1207, the following language is used:

"In cases, therefore, where real estate is purchased for partnership purposes and on partnership account, it is wholly immaterial, in the view of a court of equity, in whose name or names the purchase is made and the conveyance is taken, whether in the name of one partner or of all the partners, whether in the name of a stranger alone or of a stranger jointly with one partner. In all these cases, let the legal title be vested in whom it may, it is in equity deemed partnership property not subject to survivorship, and the partners are deemed the *cestuis que trust* thereof."

In the case of *Morrill v. Colehour,* 82 Ill. 619, it is held as follows:

"Where land is purchased by several for the purpose of sale and the acquisition of profits only, and not for permanent use, it will be regarded in equity as personal property among the partners in the speculation; and one of the parties may release his interest in the same verbally, and the same will not be within the statute of frauds."

Turning our attention for the present to pure resulting trusts, without reference to partnership transactions, we have

the following.    Mr. Pomeroy, in his work on Equity Jurisprudence, uses the following language:

"Resulting trusts, therefore, are those which arise where the legal estate in property is disposed of, conveyed, or transferred; but the intent appears, or is inferred, from the terms of the disposition, or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title.    In such a case a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner.    This person is the one from whom the consideration actually comes, or who represents or is identified in right with the consideration; the resulting trust follows or goes with the real consideration." (2 Pomeroy's Eq. Jur., § 1031.)

Also, in the following cases it has been held as follows:

"A resulting trust in land in favor of a third person may be established by parol evidence, although the deed recites that the consideration was paid by the grantee, and it was in fact paid by him, provided that it was distinctly agreed before the purchase that the sum paid should be considered as a loan from the grantee to such third person; but the proof upon this point must be full and clear." (*Kendall v. Mann*, 93 Mass. 15.)

"G. advanced a sum of money to purchase land for the benefit of J., with an agreement that the titles should be taken in the name of G., and the land conveyed to J. upon the payment of the money within a certain time, which J. failed to perform: *Held*, The facts constitute a resulting trust in favor of J.    Payment of the money and conveyance of the land decreed." (*Runnels v. Jackson*, 2 Miss. 358.)

"Where P. bought land and took a deed in the name of L., and L. advanced the purchase-money and took the notes of P. for the same, and agreed to convey the land to P. on being repaid the money advanced, and interest — it was held that the money thus advanced by L. might be considered as a loan to P., and the land as purchased with the money of P., so as to raise a resulting trust." (*Page v. Page*, 8 N. H. 187.)

"Hutchings and Honore, in 1861, jointly purchased thirty acres of land near Chicago, Ill.    Hutchings advanced the entire purchase-price, took a conveyance to himself, and executed a writing in which, among other things, 'it is agreed between said parties, that when said land is sold said Hutchings is to

have first his six thousand dollars so advanced, and ten per cent. interest, and the profits over and above said sum are to be equally divided between said parties. . . . This arrangement is to continue eighteen months, when, if the property has not been sold, said Honore is to pay one-half the sum so advanced, with the accrued interest, or said Hutchings is to be the sole owner of the same.' The land was not sold within the eighteen months, and Honore failed to pay any part of the sum so advanced. In 1869 Hutchings sold the land for one hundred thousand dollars, and refused to pay any part thereof to Honore. Honore sued Hutchings for one-half of the net profits, after deducting purchase-price, interest, etc. *Held,* That a trust resulted in favor of Honore to the extent of one-half of the land jointly purchased. This interest he pledged to Hutchings to secure the repayment to him of one-half the purchase-price advanced, etc.; and Hutchings held the legal title to one-half of the land in trust for Honore, and the latter is entitled to one-half of the net profits realized upon the resale of the same." (*Honore v. Hutchings,* 8 Bush, 687.)

"An oral agreement under which the defendant advanced money for the plaintiff to pay certain installments under a contract for the purchase of land, the defendant being named in the contract as the purchaser, but really acting for the plaintiff in pursuance of the agreement, *held,* to be valid, and not within the statute of frauds." (*Walton v. Karnes,* 67 Cal. 255; same case, 7 Pac. Rep. 676.)

See also the cases of *Millard v. Hathaway,* 27 Cal. 140, *et seq.;* *Barroilhet v. Anspacher,* 68 id. 116; same case, 8 Pac. Rep. 814; *Ward v. Matthews,* (Cal.) 14 Pac. Rep. 614; *Soggins v. Heard,* 31 Miss. 426: *Boyd v. McLean,* 1 Johns. Ch. 590 to 593; *Jenkins v. Eldridge,* 3 Story, U. S. C. C. 181, 284.

Mr. Pomeroy, in his work on Equity Jurisprudence, also uses the following language:

"Where two or more persons together advance the price, and the title is taken in the name of one of them, a trust will result in favor of the other with respect to an undivided share of the property, proportioned to his share of the price." (2 Pomeroy's Eq. Jur., § 1038.)

In this present case, the partnership consisted of Simpson, Tenney, and M. Shepard Bolles; and the property was really

purchased by and for the partnership, and for the purpose of surveying and platting it into town lots, and making it an addition to the city of Wyandotte, and selling the lots for profit; and there was no intention or understanding on the part of any one of the partners that the property should be purchased for the permanent use of any one of them, or for permanent use at all. Bolles, it is true, furnished the purchase-money, but he really furnished it to and for the partnership, and as a loan to the partnership, and it was really paid to Splitlog by and for the partnership, and the deed was executed to Bolles because he was one of the partners, and as a security for the repayment of the purchase-money to him. The deed answers as an absolute conveyance for the purpose of transferring the property from Splitlog to the partnership; but so far as it was intended as a security for the money loaned, it was only a mortgage. (*McDonald v. Kellogg*, 30 Kas. 170, and cases there cited.) At this time Simpson was the only person who had any right to purchase the property, and he did not release this right or consent that the deed should be executed to any other person than himself until all the partnership arrangements were perfected and consummated. And these partnership arrangements and this release were certainly a sufficient consideration on the part of Simpson for all the rights or interests in the property which he has at any time claimed. His right to the exclusion of all others to purchase the property was of itself and alone a thing of value and a sufficient consideration for all that followed. (*C. B. Rld. Co. v. Wilcox*, 14 Kas. 259, 268.) But that was not the only consideration. There were the partnership agreements on the part of Simpson; the contemplated personal services on his part to be performed in the future; and the further fact that Simpson was to pay one of the five-hundred-dollar notes, which he did in fact pay.

On December 11, 1878, M. Shepard Bolles admitted in a letter to Tenney that he held the property "as trustee;" that he held it "to *secure* those who have furnished money;" and that when "the purchase-money and all other liens against the property

have been satisfied," he would then hold it "for the benefit of all concerned," and the profits would then go as follows: Seven-tenths to Tenney and his "associate," meaning Simpson, and the other three-tenths to himself and his Boston associates. Also, the written stipulation furnished by the Boston parties and signed by Tenney on November 23, 1878, before the deed from Splitlog to M. Shepard Bolles was executed, shows that "Mr. S.," whom the oral evidence shows was Simpson, was to have four-tenths of the profits after paying the aforesaid purchase-money, costs, expenses, etc. And the evidence shows that Simpson was permitted to deal with the property and expend time, labor, and money with reference thereto for nearly five years before his said interest in the property was questioned. Among other things, he was actually permitted to pay $500, one-half of the commission to procure the purchase-money. Therefore did not Simpson have an interest in the purchase-money, and has not an implied trust arisen in his favor? Valid express trusts are such, and such only, as are created by the express terms of a written instrument. Implied trusts are such as arise by implication or operation of law. The interests which have arisen or been created in favor of Simpson in the present case, come very nearly being a *written express* trust; but holding that they are not, then they are clearly an *implied trust.* Implied trusts include a vast number of trusts not included in Mr. Pomeroy's definition of resulting trusts; for instance, such trusts as Mr. Pomeroy himself designates as constructive trusts. In the present case we think that the trust which has arisen in favor of Simpson is both a resulting trust and a constructive trust. It is true that by § 6 of the act relating to trusts and powers, such trusts as formerly resulted where one person paid the purchase-money and the property was conveyed to another, have been abolished except in certain cases, designated in §§ 7 and 8 of said act, among which are, "where it shall be made to appear that, by agreement, and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land, or some interest therein, in trust for

the party paying the purchase-money, or some part thereof." The trust in favor of the partnership and in favor of Simpson may be upheld under this clause just quoted. It is claimed, however, that it was not "made to appear" in the court below that the mode of purchase and conveyance in the present case was "without any fraudulent intent." We think it was; *or at least it was as far as Simpson is concerned. He* had no intention of defrauding any person, and certainly not of defrauding the other parties. The evidence shows that the deed was executed to M. Shepard Bolles instead of to all the parties, or to either of the others, for the purpose that it might be a security to Bolles for the money advanced by him, and not with any fraudulent intent.

The plaintiffs in error (defendants below) have urged as a controlling matter the fact that Tenney gave his individual notes for the purchase-money. But when we come to consider the entire facts of the case, this should make no difference. It was not understood that Tenney should pay these notes individually, and he did not do so. On the contrary, it was understood that these notes should be paid out of the proceeds of the partnership property, and they were so paid. As to to the two $500 notes given as a commission to M. Bolles & Co. for procuring the purchase-money, Tenney paid half, and Simpson paid the other half.

It is further urged that Simpson was not to have any interest in the land, but only an interest in the proceeds of the sale of lots. This is very technical, but giving it all the force to which it may be entitled, and still it can make no difference under the further facts of the case; for before the commencement of this action, the sale of the lots was discontinued and the partnership dissolved at the instance of the other parties, and the partnership debts paid; and always, upon the dissolution of a partnership and the full payment of the partnership debts, the partners become tenants in common with regard to any and all real estate still belonging to the copartnership. (1 Washburn on Real Property, 423, sub. 4.) Viewing this

**Property, held in trust for copartnership and for members thereof.** case in any light we may, it is clear that M. Shepard Bolles holds four-tenths of the property in controversy in trust for Simpson. When the deed was first executed to him he held the property in trust for the partnership, Simpson's interest therein after paying the debts being four-tenths. When the partnership was terminated he then held the property in trust for the individual partners in proportion to their respective interests in the partnership. He now holds four-tenths for Simpson.

The judgment of the court below will be affirmed.

All the Justices concurring.