MARIE D. BRISBOIS, and others, Appellants, *vs.* SIBLEY & ROB- ERTS, Respondents.

APPEAL FROM AN ORDER DISMISSING A BILL OF COMPLAINT.

A Deed or other instrument executed with intent to convey property, before the same has been purchased from the United States Government, is a mere nullity; and no title or interest passes to the grantee in such conveyance.

A party claiming title by pre-emption, must prove actual residence upon the land, and improvements made thereon by him.

A meeting of occupants of the public lands belonging to the United States, held at St. Paul on the 10th day of July, 1848, for the purpose of adopting such measures as they might deem expedient to protect and to secure to the settlers and owners their rights and claims to land upon which the Village of Saint Paul was located, (to wit, upon lands belonging to the United States Government,) at the land sales to be held in August, 1848, was a meeting opposed to the policy and laws of the Government of the United States, and any act or acts of such meeting, to carry out the purposes and objects thereof, were illegal and void.

Courts will not interfere for the purpose of adjusting the differences and supposed rights of parties claiming by virtue of the acts of such a " claim meeting," as they are illegal and void, *ab initio.*

This was an appeal from an order of the District Court of Ramsey County, dismissing a Bill of Complaint.

The Bill was filed in said District Court, sitting in Equity, on the 20th day of October, 1851, by the Complainants, the Widow and heirs of Joseph Brisbois, deceased, against Henry H. Sibley and Louis Roberts; and the object of the suit was

Brisbois *v.* Sibley & Roberts.

to recover the possession of, and legal title to, an acre of land within the limits of the original Town of Saint Paul; and for relief by injunction, &c., &c.

The Bill sets forth, that previous to the purchase from the United States, of the site of the present Town of Saint Paul, (then in Wisconsin,) the same was claimed, occupied and improved by various individuals, under the laws of the United States giving the right of pre-emption to actual settlers upon the public lands, and that said Joseph Brisbois, deceased, in his life time, claimed and owned the pre-emption right to the acre of land, the tile to which was sought by the Complainants; that on the 10th, day of July, 1848, a meeting of the various claimants to the site of the Town of Saint Paul was held at the house of Henry Jackson, in said Town, for the purpose of adopting such measures as they might deem expedient to protect and secure to the settlers and owners, their rights and claims to land upon which the Village of Saint Paul was located, at the land sales to be held in August (then) next; that said meeting then and there adopted a Resolution, whereby they bound themselves to support and maintain certain articles, that is to say : that there should be appointed three suitable persons residing or having an interest in Saint Paul, whose duty it should be to enter the land at the land sales in August (then) next, or before, if convenient, upon which Saint Paul stood, with the express understanding and intention that the persons who shall make such entries should act therein as the joint agents of the occupants or owners of the claims in said Village.  And it should be their duty, as soon as might be, after such land should be entered, to deed so much of the same to each citizen or owner of property in said Village, as should of right belong to him; that a Committee of seven should be appointed to decide all cases of conflicting claims in relation to said land, and that the said agents should deed said lands, in pursuance of the decision of said Committee ; that each claimant should hand to the chairman of that Committee, a description of his claim, and in case of disputed claims, the same were to be decided by said Committee before the 28th of August (then) next, giving to claimants notice of time and place, &c.

The said committee were to collect from the claimants the amount of money necessary to enter their respective claims, and were to hand this money to the agents on or before the day of sale.

All Deeds were to be made out according to the town plot as surveyed by Lra Bronson, which plot was to be recorded.

It was further declared to be the duty of the citizens in general, to guard and protect the rights of each other against speculators purchasing lands upon which they live, and *Provided* that no claimant could claim more than one hundred and sixty acres of land.

The Bill further states, that Henry H. Sibley and six others were appointed as said committee, and that said Henry H. Sibley, Franklin Steele and Louis Roberts, were selected as the agents to enter said land according to the provisions of the said Resolution.

That afterwards, the said Henry H. Sibley entered and purchased from the United States Government, that portion of the site of Saint Paul, within the limits of which the parcel of land described in the Bill was situated. That the said committee of seven, appointed as aforesaid, afterwards allotted said parcel of land to the said Joseph Brisbois, in his lifetime, and directed a Deed to be made to him therefor, according to the said Resolution.

That afterwards, the said Henry H. Sibley, being about to leave said Territory, temporarily, did, on the 7th day of November, 1848, with his wife, make, execute and deliver a Power of Attorney to one David Lambert, giving him full power to make, exeucte and deliver Warranty Deeds " of " all the lands entered by me at the Land Office for the Chip- " pewa Land District, as one of the Committee of the Board of " Arbitrators chosen for that purpose, said Deeds to be made to " the parties who fairly claim the same, only upon certificates " of the Board of Arbitrators aforesaid, the said parties paying " to my said Attorney the amount of the consideration paid " by me for each of them." And which Power of Attorney was duly recorded, &c., &c.

Afterwards, on the 7th day of February, 1847, the said David Lambert, as Attorney in fact for the said Henry H. Sibley,

and professedly under and by virtue of said Power of Attorney, but in direct violation of the authority to him given, did make, execute and deliver a deed of conveyance for said land, claimed, owned and allotted to Joseph Brisbois as aforesaid, to the said Louis Roberts.

That said Joseph Brisbois departed this life at Prairie du Chien, Wisconsin, on the 14th day of January, 1847, intestate.

That said Louis Roberts had taken possession of said land, and was making excavations thereon, and removing therefrom large quantities of building stone, to the irreparable injury of the Complainants.

That they had demanded from the said Sibley a Deed for said land, and had requested the said Louis Roberts to deliver up and cancel the Deed so received from the said Lambert, and to desist from the quarrying and removal of building stone, as aforesaid, which demands had been refused by the Defendants.

And the Complainants ask that the Defendant Sibley may be required to Deed the premises and land to them; that the Deed from Sibley, by his Attorney, to Roberts, be cancelled and delivered up, and that said Roberts be restrained by injunction from quarrying and removing stone from the land, and for general relief, &c.

Upon filing the Bill of Complaint, Bond, &c., a Writ of Injunction was granted and issued as prayed for.

Afterwards, the Bill of Complaint was taken as confessed by the Defendant, Henry H. Sibley.

On the 3d of December, 1851, the Defendant, Louis Roberts filed his answer, a great portion of which was, upon exceptions, filed, expunged and stricken out, as impertinent and scandalous.

On the 12th day of April, 1852, the Defendant, Louis Roberts, filed in said Court his "further answer," which admits many of the allegations in the Bill, but denying fraud, &c., and expressly denying that the said Brisbois ever had a pre-emption right to the lot of land in question, as he never resided thereon, nor in, or near the town of Saint Paul.

That before the land was entered, and while it was owned by the United States, one Alex. P. McCloud, who had a pre-emption claim in conjunction with others to it, desiring that the said

Brisbois should become a citizen of Saint Paul, agreed to give him an acre, (and did quit claim the same to him,) on condition that he would settle and reside here: but that he never did so, and not complying with the conditions upon which the said land was to be given to him, forfeited all right thereto.

That he had never paid any consideration therefor to McCloud, or to any one else, never improved it, or resided on or near it, at any time.

That, notwithstanding all this, it was the intention of the said McCloud to permit the said Brisbois to have an acre of ground, by complying with the terms which those actually here had to comply with, to wit: pay the entrance money and the expense of conveyance: that such being the understanding, and the said Brisbois being indebted to the said Roberts in the sum of One Hundred Dollars, and he, (Roberts,) having no other way of securing his money, accepted the claim of said Brisbois, on McCloud's liberality, as the only hope of se-curing such indebtedness. And when the Arbitrators adjudicated the lands to the several claimants, they awarded the acre in question to said Roberts, he paying the entrance money, &c., and giving a bond to make a Deed to the said Brisbois therefor, if he, (Brisbois,) should thereafter pay the amount he owed Roberts, and said entrance money, within six months.

That said term of six months had expired before the commencement of this suit, and no payment or tender or offer of payment had ever been made by Brisbois, or by any one for him.

That at the time said land was so awarded to him as aforesaid, it was not considered worth the amount of such indebtedness, but that he, (Roberts,) had taken it as all he could get, and that he had never obtained any title thereto, by, through, or under said Brisbois.

And the Defendant admits that Brisbois *claimed* the acre of ground, but denies that he claimed the *pre-emption right*, and says that his claim was based solely upon the promises of said McCloud, set forth in the Answer.

And denies that said committee, or Board of Arbitration, ever allotted the said acre of land to said Brisbois, or that they ever directed a deed therefor to be made to him.

The Respondent further admits that he was in possession of the property in question, but says that the statement contained in the Bill, concerning a stone quarry, excavations, &c., is wholly untrue.

To this Answer was annexed the Affidavit of Alex. R. McCloud, who says that he had read the Answer, and that as far as it related to him and his disposition of the acre in question, it was true, to wit: that he gave the same to Brisbois on condition that he would move here with his family; and " I " gave him a quit-claim to an acre, before the land was pur- " chased of the United States. When the purchase was made, " and the land was about to bo divided, I consented, although " Brisbois had not complied with the terms on which I gave him " the said acre, and therefore had no right to claim it, still I " consented for it to be awarded by the Arbitrators to Louis " Roberts, in satisfaction of a debt, or to secure a debt, of Bris- " bois."

The Complainants filed a general Replication to the Answer, and afterwards upon a hearing, the Bill of Complaint was dismissed with costs; and the following opinion was filed by Judge Sherburne.

*By the Court*—SHERBURNE, J. Upon reading the pleadings and proof in this matter, I discovered no ground upon which, in my opinion, the prayer of the bill could be granted, and should have disposed of it without further attention, but for the great confidence which I have in the learning and ability of the Counsel who instituted and have prosecuted the proceedings, mistrusting therefore my own first impressions. I have given the case all the attention which the pressure of business has allowed me, but it has only served to confirm my original opinion. The deed from McLeod to Brisbois was a mere nullity. If McLeod had the right to convey his pre-emption right to the acre in controversy, Brisbois could not hold it. He never resided upon the land, nor in the Territory even. If the consideration of the deed were a proper subject of inquiry, it would further appear that he never paid one farthing for it. The claim is made on account of a pre-emption title, and yet the case shows that the person under whom the claim is made never resided upon the land, nor improved, saw it, or paid for it.

It is doubtful whether the award of the Committee of the claim-meeting, if it had been made to Brisbois, would have aided him. The meeting was opposed to the policy and Laws of the Government, and its acts were void. The fact that such meetings are common, and their doings "winked at" by the Government and the public, does not aid these complainants in a Court of Law. If Brisbois was one of the parties assenting to and aiding the claim-meeting, he was aiding a combination for an illegal purpose, and a Court will not adjust their differences.

The maxim "*In pari delicto*," &c. well applies. If he did not assent to the meeting, and was not a party to their pro-·ceedings, their acts are certainly not binding upon him, nor could he take advantage of those in his favor. They should be assented to and mutual to be of force, if proper in other respects.

If Brisbois had had a right to the land, or to the purchase of it from Government, the action of the Committee and of Sibley's Attorney might be inquired into : but having no right at the time, those claiming under him are without any legal or equitable right to question the correctness of either.

But I am clearly of opinion that the weight of evidence is in favor of the position taken by the Defendant, Roberts, that the award of the arbitrators was that the land be conveyed to him subject to the conditions of the bond mentioned in the answer.

The case showing therefore that the Committee awarded the land to Roberts, there seems to me nothing upon which a decision in favor of the Plaintiffs can be founded.

The Complainants do not rely upon the bond to Sibley : but had they done so, it is a sufficient answer that its conditions were in no respect complied with.

There is another view of this question, which renders the Complainants' claim at least very doubtful. Contracts, to be binding between the parties, must be mutual. This, as a general principle, is well understood. Suppose these lands had fallen in value to one-fourth of the Government price,—there would have been no claim upon Brisbois or his heirs for the loss.

It does not even appear in this case that the Government price has been offered or tendered.

I have no hesitation in determining that the bill cannot be sustained, and it must therefore be dismissed with costs.

The Complainants afterwards appealed to this Court from the order dismissing the Bill of Complaint.

Points and authorities submitted by Appellants :

*First.* Henry H. Sibley held the land in trust for the different claimants, which trust was sufficiently evinced by his written power of attorney to D. Lambert : and such trust was not in contravention to the Laws of the United States, nor in violation of public policy.

*Second.* Joseph Brisbois held the beneficial interest in the acre of land in question, and was entitled to a conveyance thereof from Henry H. Sibley, who was merely his agent or trustee, making the purchase.

*Third.* Louis Roberts has not shown any title whatever to the land.

*Fourth.* That as between Mr. Sibley and the Complainants, the said Complainants are entitled to a decree.

*Fifth.* That the Complainants are entitled to a decree against Roberts, who has not established a defence.

*Sixth.* That the Court below erred in excluding in the decision of the case the acts and proceedings of the meeting of the claimants and the award of the Committee, set forth in the bill, as being opposed to the policy and Laws of the Government and void.

*Seventh.* The Court erred in dismissing the bill.

Authorities : *Revised Statutes, Sec.* 6. *p.* 267; *ibid, Sec.* 11, *p.* 203 ; *ibid, Sec.* 21, *p.* 204 ; *ibid, Sec.* 23, *p.* 204 ; *Story's Equity Jurisprudence,* 2d *vol. p.* 439, *Sec.* 1065 ; *ibid, Sec.* 1195—1201 ; 2d *Fonblangue's Equity, p.* 116.

Points and authorities relied upon by Respondents :

*First.* The bill does not contain an equitable case : and if the Complainant omits to state an equitable case in his bill the Court cannot notice it, although established by proof. *Dilly vs. Heckwith,* 8 *Gill & Johnson,* 171.

*Second.* The Complainants fail to show performance on their part, and cannot exact it. 1 *Desau,* 160 ; 2 *ib.* 582, *et passim.*

*Third.* The answer being sworn to, and taking issue upon all of the material allegations of the bill, must be taken as true, unless disproved by two witnesses, or one with pregnant circumstances. 2 *Wheaton,* 380; 1 *Paige,* 239; 2 *John's Ch. R.* 92; 9 *Cranch,* 153.

*Fourth.* The Complainants having filed a replication to the answer, have admitted its sufficiency as a bar. *Daniels vs. Taggart,* 1 *Gill & Johns.* 312; *Hughes vs. Blake,* 6 *Wheaton,* 472.

*Fifth.* The proof establishes no equities in the Complainants. The deed of McLeod was made before the patent emanated, passed no interest, was voluntary, without consideration, and against public policy: as was the whole train of circumstances upon which the Complainants rely. *Shakleford vs. Hambley's Ex'rs. A. K. Marsh's R.* 501; 3 *Story's Rep.* 365; *Caldwell vs. Williams, Bailley's Eq. Rep.* 175; *Acker & Chapman vs. Phenix,* 4 *Paige,* 205; 2 *Paige,* 84; *Carrington vs. Callen,* 2 *Stewart's Rep.* 175.

*Sixth.* The bond of Roberts was voluntary, immutual, not duly prosecuted, nor its conditions performed, and cannot be enforced. 4 *Paige,* 305; 2 *Har. & Gill,* 100; 1 *Story's Rep.* 204; 3 *ib.* 612.

*Seventh.* The preponderance of proof is with the Respondents.

HOLLINSHEAD & BECKER, Counsel for Appellants.

MURRAY & WILLIAMS, and BRISBIN & BIGELOW, Counsel for Respondents.

The opinion of the District Court is reported at length, for the reason that upon argument in the Supreme Court the order appealed from was affirmed with costs, and no further opinion filed.