THE CENTRAL BRANCH UNION PACIFIC RLD. CO. v. NANCY J. WILCOX.

TRUST; *What facts Create a Trust; Trustee to Convey to Equitable Owner.* Under the Kickapoo treaty of 1862 (13 U. S. Stat. at Large, 623,) the Central Branch Union Pacific Railroad Company, otherwise known as the Atchison and Pike's Peak Railroad Company, purchased from the Government of the United States all the surplus lands belonging to the Kickapoo Indian Reservation, and obtained certificates of purchase therefor, from the Secretary of the Interior; and before the Railroad Company obtained patents for said land, one S. C. P., who was the president and attorney-in-fact for said railroad company, and duly authorized, did by an assignment, written and printed on the same piece

of paper on which one of said certificates of purchase was written and printed, "transfer and assign to N. J. W. all the right, title, and interest of the said Atchison and Pike's Peak Railroad Company "to a certain quarter-section of said land," and require the issue of a patent to N. J. W. as assignee of said company, in accordance with the terms of said certificate," and the said N. J. W. afterward took possession of said land under said certificate and the assignment thereof, and made valuable improvements thereon; and afterward the said railroad company caused the patent for said land to be issued to itself, and now refuses to transfer the legal title to said land to said N. J. W. *Held*, that the railroad company holds the legal title to said land in trust for said N. J. W., and that the company may be compelled to transfer the same by deed to said N. J. W.

*Error from Atchison District Court.*

NANCY J. WILCOX, as plaintiff, filed her petition, against the *Railroad Company* as defendant, alleging that on the 2d of January 1866, the then Secretary of the Interior executed and issued to said *Railroad Company* two certain certificates of purchase, copies of which are fully set forth in the opinion, *infra*, and that afterward, on the 10th of August 1866, the said defendant, "by S. C. Pomeroy, its president, agent and attorney-in-fact, in that behalf by it thereunto duly appointed and authorized," for value received, made, executed and delivered to said plaintiff certain instruments of writing, transferring and assigning to said plaintiff all the right, title and interest of the said *Railroad Company* in and to the lands mentioned in said two certificates of purchase and requiring "the issue of a patent to *Nancy J. Wilcox* as assignee of said company, in accordance with the terms of said certificate." Answer, a general denial, and a special denial. Trial at the June Term 1873 of the district court. Separate findings of fact, and conclusions of law were made. The 8th finding of fact is as follows:

"8th. That Samuel C. Pomeroy did not receive said certificates from the defendant in blank, and thereafter execute the same in blank with the name of grantee left out; that the same were never delivered to L. C. Challiss, nor any other person except the defendant, and that G. L. Gaylord never sold the same to plaintiff upon any terms or conditions what-

ever, and never had anything to do with the same, but that they were regularly transferred for a valuable consideration from defendant to plaintiff, as is particularly described in exhibits attached to plaintiff's petition."

As a conclusion of law, the court found that "the plaintiff is entitled to judgment as prayed for in her said petition, and to an order that defendant make and execute a deed to plaintiff of the said two tracts of land, within sixty days from the rising of the court, and that in default thereof the sheriff of Atchison county be ordered to make such conveyance to plaintiff," and judgment was entered accordingly. The *Railway Company* brings the case here on error.

*A. G. Otis*, and *O. S. Everest*, for plaintiff in error:

1. Admitting all the facts of the petition, the written instruments set forth as executed by S. C. Pomeroy as president and attorney-in-fact of plaintiff in error, are mere quitclaim deeds. They release and convey only the right, title and interest the Railroad Company had on the 10th of August 1866 in the two tracts of land. At this date it had no title legal or equitable therein, under the terms of the Kickapoo treaty. It is neither averred nor assumed by plaintiff that it had any. Its road was then unconstructed, and the terms of the treaty, the conditions precedent wholly unperformed on its part. Its after-acquired title did not inure to the benefit of the defendant in error: *Simpson v. Greeley*, 8 Kas., 597; 9 Kas., 201.

2. The court erred in sustaining objection to the question asked to witness Wilcox. The question asked was, "Are these the two certificates sued on?" The defendant had a right on cross-examination, after the certificates were formally in evidence by plaintiff's consent, to ask any question identifying them, and to call the attention of the witness to the two certificates produced.

The court also erred in overruling the written objections of defendant to the deposition of S. C. Pomeroy, and allowing the same to be read. Six of the questions were leading, irrelevant, and not proof of any fact within the issue, and the

objection to them should have been sustained. Question No. 7 is this:

"Were these assignments when made and delivered by the company, so far as the papers themselves are concerned, intended to convey the title to the land itself or only the right to purchase the land provided for embraced in the treaty with the Kickapoos?"

The question is leading, and also asks the opinion of the witness as to the legal effect of these certificates and the written instruments attached thereto. The intention of the company is to be gathered from the instruments themselves, and they are to be construed as to their legal effect by the court, not by the witness. Their plain legal interpretation cannot be thus construed away, changed, altered or modified: 8 Kas., 18; 6 Kas., 46, 55, 59; 1 Greenl. Ev., §§ 440, 441, 275, 277.

3. The court erred in overruling defendant's demurrer to plaintiff's evidence. The evidence of witness Wilcox clearly showed that plaintiff was not a *bona fide* purchaser, but bought with full notice of the defects of title. She took Gaylord's guaranty to refund her the purchase-money she had paid him, if she did not succeed in getting her patent from the government. The whole testimony establishes these facts: that the plaintiff was not put in possession by defendant or with its consent; that the improvements she made were merely nominal, of the value of $85 only; that plaintiff bought of one G. L. Gaylord, in March 1870, and took possession thereafter, and paid him therefor, taking his guaranty to refund the purchase-money if she failed to get her patent; that plaintiff dealt only with Gaylord, and paid him alone, and utterly fails to show that defendant knew of or recognized her entry, or that defendant ever received one dollar of consideration from anybody for these lands. Her entry March 8th 1870 was not under the deeds of release or written instruments purporting to be of date August 10th 1866, four years before, but under her purchase from Gaylord, and under his guaranty of indemnity. And no demand was ever made on the Railroad Company by plaintiff for a deed, nor was a deed tendered to it for execution.

No fraud on the part of the Railroad Company is established or even sought to be. And article 6 of the treaty required the Railroad Company to pay for all these lands, including these tracts, before it could get title to any, or its patent.

4. Findings of fact and conclusions of law are erroneous. Finding of fact No. 8, is wholly unsupported by evidence, and directly contrary to it. The court could only find its conclusions of fact upon and in accordance with the evidence, and not directly contrary to such evidence, and against all the evidence.

The 2d conclusion of law, "That the writing signed S. C. Pomeroy on said certificates was an assignment thereof from the defendant to the plaintiff," is contradicted by the writing itself. It is no more an assignment of this certificate sued on than of any other certificate. It is not an assignment of any certificate, but a quitclaim deed of the land. There was no authority given by the treaty to the Railroad Company to assign the certificates.

5. The written instruments themselves do not purport to be executed by the railroad company, but by S. C. Pomeroy. The addenda, "President of and Attorney-in-fact for the Atchison & Pike's Peak Railroad Co.," may well be considered words of *descriptio personœ*. No seal of the company is affixed. We may well hold that these are not the conveyances of the railroad company at all. The case of *Hatch v. Barr*, 1 Hammond, 390, is in point directly, where such a signature was held to convey no title from the corporation. See also, 2 Cushing, 329; 8 Conn., 192; 8 Cowen, 32; 1 Blackf., 189; 8 Blackf., 144.

*Clough & Wheat*, for defendant in error:

The answer in this case, not being sworn to as required by the code, § 108, admits all the substantial allegations of the petition. It admits the proper execution and delivery of the certificates of purchase, set forth in the petition, and the proper assignment and delivery of said certificates to the

plaintiff, Nancy J. Wilcox. It admits also the execution and delivery of the patent by the United States to the plaintiff in error, a copy of which is set forth in the petition, and which includes the lands in controversy, and the court also finds such to be the facts.

The real defense in this case is, that these certificates, with the assignments and transfers thereof, do not, by their terms, entitle the plaintiff to a conveyance as prayed for in the petition, but that the assignment of the certificates conveyed *only* the right to Nancy J. Wilcox to receive patents from the United States for the lands mentioned in said certificates, upon payment by said Nancy to the government of the United States, or to said Railroad Company, of $1.25 per acre, with interest from the date of purchase by the Railroad Company, (see 13 U. S. Stat. at Large, 625, § 5,) in addition to the $2,400 paid by said Nancy to the Railroad Company when she obtained the transfer of the certificate. That this is the *only real point* in the case, is shown by the second paragraph of the answer, and by the action of plaintiff in error in objecting to the giving or receiving of any evidence under the petition in said case, and by his interposing a demurrer to the evidence after plaintiff had closed her testimony.

By the provisions of the Kickapoo Treaty aforesaid, there is no apportionment of the purchase-money of the lands thereby disposed of; neither the government nor the Kickapoos sold, nor did the Railroad Company purchase, any one 160 acres of land at $1.25 per acre; on the contrary, § 5 of the treaty says distinctly, "provided said Railroad Company purchase the whole of such surplus lands at the rate of $1.25 per acre."

When the contract of purchase was completed, and the patent issued, the title by relation *commenced at the time when that contract was made.* The case of *Parker v. Winsor*, 5 Kas., 362, 373, does not militate at all with our views in this case, because when *this* suit was brought, both the legal and equitable title had passed from the Kickapoos and the United States, to the Railroad Company; when the case of *Parker*

*v. Winsor* was brought, neither title had so passed, and this is referred to by the court in its opinion, (page 373,) and made, as we think, the basis of its decision in that case. Both the legal and equitable title having passed when this suit was commenced (because it is found by the court that the patent had issued, that the lands had been paid for, and the road built in accordance with the provisions of the treaty,) both titles *related back to the date of the original purchase,* in accordance with the doctrine so fully laid down by the supreme court of the United States, in 10 Howard, 373.

Nor does the general doctrine relied upon in the court below by counsel for plaintiff in error apply, "that a quitclaim deed does not convey an after-acquired title"— because *this* patent conveyed *no new title,* but was only the *consummation* and *perfecting* of the title *contracted* for in the original purchase by the Railroad Company, when they elected to take all the surplus Kickapoo lands. 6 Wall., 402; 1 Black, 352; 23 How., 456; 24 How., 323. The plaintiff in error after receiving the patent was shown to be a trustee, holding the title to the lands in controversy in trust for defendant in error — and upon the introduction of evidence of a demand upon and refusal by plaintiff in error, to make a deed to said lands to said Nancy, she was entitled to the decree she obtained in the court below. And it makes no difference what evidence was admitted or rejected, and any exceptions taken thereto need not be noticed by us, or this court. Code, §§ 140, 304; *K. P. Rly. Co. v. Pointer,* 9 Kas., 626; *Seibert v. True,* 8 Kas., 53.

With reference to the assignment of error, that the findings of fact are not sustained by sufficient evidence, we would state that the 1st, 2d, 3d, 4th, 8th and 9th findings are admitted by the pleadings, and are found from the pleadings, and neither party could have been permitted to show the contrary. We suppose that the 8th finding of fact is the only one that plaintiff in error really objects to, and the whole of this finding, except the last four lines, has nothing whatever to do with the case, and that portion of said finding was made solely, as is apparent upon its face, at the solicitation of plain-

18—14 KAS.

tiff in error. Yet in view of the provisions of § 108 of the code, and of the allegations of the petition, and of the failure of plaintiff in error to deny any of said allegations or averments under oath, the district court or any other court could not find otherwise.

The entire deposition of Pomeroy might be stricken out, and it could not affect the case in the least. As to the objection made that certain questions were leading, we would state that we believe it is conceded law, that no such objection to questions asked a witness, and not objected to at *the time*, as *leading*, can afterward be raised on the trial. 9 Kas., 511, 627.

We claim further that the wording of the treaty itself, quite as much as the wording of the certificates, shows that the government and the Railroad Company both intended that the $1.25 per acre should be paid by the Railroad Company, and not by its grantees. We think too that the treaty contemplated the *issue of patents* to the Railroad Company, *or its assigns*, but that the *payment* should be made *in bulk*, for the *whole lands*, by the *Railroad Company* alone, and for the purpose of securing such payment, according to the terms of the treaty, the Railroad Company was required to issue its bonds in double the amount of the entire purchase-money.

The opinion of the court was delivered by

VALENTINE, J.: Suit was brought in the court below by defendant in error to compel a conveyance to her from plaintiff in error of two certain specified tracts of land, being part and parcel of the Kickapoo Reservation in Atchison county. The plaintiff below bases her case upon two certificates of purchase issued by the United States government to the defendant below, of date January 2d 1866, which had passed into plaintiff's possession, and upon two written instruments written upon the same pieces of paper with said certificates, executed by S. C. Pomeroy, president of and attorney-in-fact for the defendant railroad company, and purporting to have been so executed to plaintiff at the date thereof, August 10th

1866. The plaintiff further averred in her petition, that the defendant obtained a patent from the United States for these tracts of land September 5th 1871; that it obtained the same fraudulently, as against the plaintiff, and with intent to convert said lands to its own use; that she, the plaintiff, had entered into possession of said lands, and made improvements thereon, and praying for a decree for conveyance from defendant. The defendant answered, first, a general denial; second, a specific denial that said certificates and written instruments conferred on plaintiff any right or interest in said tracts of land, and averred that it, the defendant, was the sole owner of the same. This answer was not verified by affidavit. The plaintiff replied by filing a general denial. Trial was had by the court, without a jury. Defendant objected to the introduction of any evidence under the petition, as not stating a cause of action. Objection overruled and exception taken. After plaintiff's evidence was in, defendant filed a demurrer to the evidence, which was also overruled, and exceptions taken. After the evidence closed, all of which appears in and is made a part of the record here, the court found its conclusions of fact upon the evidence, and its conclusions of law, and rendered judgment that defendant make and execute to plaintiff a deed of the tracts of land named.

On behalf of the plaintiff in error counsel submit in this court, that the court below erred in overruling defendant's objection to the introduction of evidence under plaintiff's petition. This is the principal, and about the only substantial question in the case. The question really is, whether the petition below states facts sufficient to constitute a cause of action. We think it does. It is not necessary to plead the public laws or treaties of the United States. They will be taken notice of judicially, without pleading or proving them. Hence all the provisions of the Kickapoo treaty of 1862 (13 U. S. Stat. at Large, 623,) will be taken notice of judicially, although some of the provisions thereof may not have been specifically mentioned in the petition. This proposition does not seem to be controverted by counsel on either side. Now

it is claimed by counsel for plaintiff in error, that under the provisions of that treaty the railroad company had no title, legal or equitable, to the land in controversy, when the said assignment was made by said Pomeroy as attorney-in-fact for said railway company to the plaintiff below. This we admit, and shall decide the case upon that theory. (*Parker v. Winsor*, 5 Kas., 362, 373; *Douglas Co. v. U. P. Rly. Co.*, 5 Kas., 615, 621, et seq.; *Baker v. Gee*, 1 Wallace, 333; *Railway Co. v. Prescott*, 16 Wallace, 603; *U. P. Rld. Co. v. McShane*, 2 Central Law Journal, 104; *Brisbois v. Sibley*, 1 Minn., 230.) Although it was provided in the 5th article of the said treaty, as it was originally drawn, that "such certificates" as those sued on in this case "shall be deemed and held in all courts as evidence of *title and* possession in said railroad company," yet the said words, "title and," were stricken out of said article before it was ratified, and the words, "the right of," inserted in their place, by way of amendment, so that said provision now reads, that "such certificates shall be deemed and held in all courts as evidence of *the right of* possession" only. (13 U. S. Stat., 629.) But although the railroad company had no title to said land at the time said certificates were assigned, yet they had a valid contract with the government under which they had the exclusive power to obtain title, and this title they could obtain either for themselves or for their assignees; and at the very time said certificates were assigned the railroad company had the right of possession to said land, to the exclusion of all others. They had a right to assign all their interest in the land, including their right to obtain title, and their right of possession; or in other words, they had a right to make a valid contract for the sale of the land. And such a contract the government would undoubtedly recognize as valid under said treaty. (See articles 5 and 6 of the treaty.) The plaintiff in error seems to claim that said assignments amount only to quitclaim deeds. Now, although they read in some respects like quitclaim deeds, yet in fact they are not deeds at all. They were not intended to perform the office of deeds. They were not intended to convey any present

estate or title in or to the land. But they are merely simple contracts, intended to transfer the inchoate interest of the railroad company in and to said land, and to transfer their right to obtain said title at some future time from the government. They sold their right to have the patent from the government for the land issue to themselves, and required by their agreement that it should issue to Nancy J. Wilcox. The two certificates are alike except as to the description of the land, and the two assignments are also alike with the same exception. Below we give a copy of one of said certificates, with the assignment thereof, which reads as follows:

UNITED STATES OF AMERICA.

No. 700.  DEPARTMENT OF THE INTERIOR,
January 2d, 1866.

WHEREAS, it is provided by the fifth article of the Treaty between the United States and the Kickapoo Tribe of Indians, concluded June 28, 1862, as afterwards amended and proclaimed on the 28th day of May, 1863, that after certain portions of the lands belonging to said tribe of Indians shall have been allotted and set apart for the use and benefit of the members of said tribe, the Atchison and Pike's Peak Railroad Company shall have the privilege of becoming the purchaser of the remainder of the lands not so set apart and allotted, upon certain conditions therein prescribed; and —

Whereas, the said lands have been allotted and set apart to the members of said tribe, as prescribed by said Treaty, and the said Railroad Company has elected to become the purchaser of the remainder thereof, and by its President, the Honorable Samuel C. Pomeroy, has executed and delivered to the Secretary of the Interior its bond in the penal sum of three hundred and ten thousand dollars, being double the value of such remainder, or surplus of said lands, estimated at the rate of one dollar and twenty-five cents per acre, conditioned as by the terms and provisions of said Treaty is required, which said Bond has been accepted and approved by the Secretary of the Interior: Now, therefore:

It is hereby certified, that under and by virtue of the provisions and terms of the said Treaty, as amended, the Atchison and Pike's Peak Railroad Company has become the purchaser, and is entitled to the possession of 160 *acres, being the s. e.* ¼ *of* Section *Nineteen,* Township *Five s.,* Range *Seven-*

*teen e.* 6th *p. m.,* the same being parcel of the said surplus or remainder of said lands: subject, however, to all the terms and conditions, considerations, and stipulations in said Treaty in that behalf mentioned and set forth.

It is also hereby further certified, that in case the said Atchison and Pike's Peak Railroad Company shall well and truly do and perform all things required to be done and performed on its part, in the time and manner prescribed by said Treaty, and shall well and truly pay for said surplus or remainder of said lands, as by said Treaty stipulated, then and in that case the said Atchison and Pike's Peak Railroad Company, or the assignee hereof, will be entitled to demand and receive from the United States of America a patent in fee simple for the premises above described.

In testimony whereof, I have hereunto set my hand and caused the seal of said Department to be hereunto affixed, this *second* day of *January,* 1866.

[L. S.]

JAS. HARLAN, *Secretary.*

For value received, I, *S. C. Pomeroy, President of, and* as the duly authorized attorney-in-fact of the *Atchison and Pike's Peak Railroad Company, for said Company,* do hereby transfer and assign to *Nancy J. Wilcox* all the right, title, and interest of the said Atchison and Pike's Peak Railroad Company to *the s. e.* ¼ *of Section Nineteen* (19,) *Township Five* (5) *south, Range Seventeen* (17) *east of* 6th *p. m.,* and require the issue of a patent to *Nancy J. Wilcox,* as assignee of said Company, in accordance with the terms of said certificate.

Witness my hand and seal this *tenth* day of *August,* 1866. Attest:    S. C. POMEROY, *President of,* [L. S.] *and Attorney-in-fact for the Atchison and Pike's Peak Railroad Co.*

State of *New York,* County of *New York:*

On this *tenth* day of *August,* 1866, before me, personally came *S. C. Pomeroy, President of and Att'y-in-fact for A. & P. P. Railroad Co.,* to me well known, and acknowledged the foregoing assignment to be *his voluntary* act and deed, *and the voluntary act and deed of the said A. & P. P. Railroad Company.*    CHAS. V. WARE,

[L. S.]    *Notary Public, New York City.*

It will be noticed that the railroad company agreed to "*require* the issue of the patent to Nancy J. Wilcox, as assignee of said company, in accordance with the terms of said certifi-

cate." This was a valid contract. If not authorized by the treaty in direct terms, it is certainly authorized by it by necessary and unavoidable implication. The assignment was on the same piece of paper as the certificate, and was printed thereon in blank, under the supervision of the Secretary of Interior, which shows what the opinion of the Secretary of the Interior was. Now as the company did not allow the patent to issue to Mrs. Wilcox, as they agreed, but took the patent to the company, we think the company ought to convey the title to the land to Mrs. Wilcox. Under the provisions of said treaty and said certificate and said assignment, we think it should be inferred that the railroad company should have done all that was necessary to be done, so that they could *require* the patent to be issued to the plaintiff, and the evidence in the case amply shows that this was the understanding of the parties. It is claimed by plaintiff in error that said assignment was made in the name of S. C. Pomeroy, and not in the name of the company. Admitting for the purposes of the case that said assignment was so made, and still it makes no difference. It is not a deed conveying title. It is only a simple contract providing for a conveyance of title. It is not necessary that such a contract be made in the name of the principal. *Butler v. Kaulback*, 8 Kas., 668, and cases there cited; *Welsh v. Usher*, 2 Hill's Ch., (S.C.) 167. This contract however shows who the principal was, and who the agent was. It shows that Pomeroy acted merely as the agent of and for the railroad company.

We now come to the supposed errors in admitting and excluding evidence. The most of the evidence complained of, which was either admitted or excluded, was wholly immaterial to the issues in the case, but was of such a character that the action of the court certainly did not tend to prejudice any of the substantial rights of either of the parties. That the defendant was a corporation, as alleged in the petition, was expressly admitted by the pleadings; and that said certificates, said assignments, and said patent, were all duly executed, were impliedly admitted by the pleadings. The plaintiff in

error did not put their execution in issue by denying their execution by a pleading verified by affidavit, and hence the statements of the petition, alleging their due execution, must be taken as true. (Code, § 108; *Gulf Railroad Co. v. Wilson,* 10 Kas., 105, 111, 112; *School District v. Carter,* 11 Kas., 445.)

Under the pleadings the question asked the witness Wilcox, and nearly all of the deposition of Pomeroy, were wholly immaterial, and neither their admission nor exclusion could have materially affected the case. In those portions of Pomeroy's deposition, material to the case, and read in evidence, we do not see any question sufficiently leading to require a reversal of the case. We do not think the demurrer to the evidence should have been sustained, for the allegations of the petition were amply proved. We take no notice of the evidence which was merely immaterial, or which did not tend to prove any issue in the case, and which did not tend to prejudice the substantial rights of the plaintiff in error. There was some of this kind of evidence introduced. The most of the facts found by the court were facts admitted by the pleadings. Whether the eighth finding of fact was warranted by the testimony outside of the pleadings, or not, is wholly immaterial. The pleadings impliedly admit the due execution of said certificates and said assignments, and evidence could not properly have been admitted to show that they were not duly executed. It makes but very little difference whether the court below was technically correct in all its conclusions of law or not, provided the pleadings, and the evidence thereunder, and the facts found from such evidence, sustain the judgment. And we think the pleadings, the evidence thereunder, and the facts found therefrom, amply sustain the judgment, and it is therefore affirmed.

All the Justices concurring.